358 P.2d 1035

Rex COLLINS, Claimant-Plaintiff-Respondent,

v.

Rex MOYLE, dba Moyle Mink Farm, Employer-Defendant-Appellant.

No. 8897.

Supreme Court of Idaho.

Jan. 25, 1961.

Harold A. Ranquist, Marion J. Callister, Boise, for appellant.

Gigray & Boyd, Caldwell, for respondent.

TAYLOR, Chief Justice.

Defendant, employer (appellant) owns a mink farm at Star, in Ada county, which he operates under the name of Moyle Mink Farm. In July, 1958, plaintiff (respondent) was employed as a laborer upon the farm in preparing food for, and feeding, the mink, and cleaning their pens. July 5, 1958, while engaged in unloading frozen blocks of filleted trash fish from a pickup truck, on the farm, a bone protruding from

one of the blocks pierced the flesh at the base of plaintiff's thumb. Infection developed. Plaintiff later made claim for, and was awarded, workmen's compensation and medical expenses. From such award the defendant, employer, prosecutes this appeal.

Two issues are presented. The first is whether plaintiff was at the time of the injury engaged in an agricultural pursuit, not covered by the Workmen's Compensation Law. Second, if plaintiff was covered by the Workmen's Compensation Law, is the defendant, employer, excused from the obligations imposed by that law by reason of the failure of plaintiff to comply with the employer's request that plaintiff see the employer's doctor.

■ Employments not covered by the Workmen's Compensation Law are set out in I.C. § 72–105A, which, so far as applicable here, provides:

"None of the provisions of this act shall apply to the following employments * * *:

"1. Agricultural pursuits. Agricultural pursuits, as used herein, shall include the care-taking and handling of livestock on enclosed lands and public ranges. * * *"

The Board concluded:

"That 'mink farming' and 'fur farming' so-called is not an agricultural pursuit nor does it constitute 'the handling of livestock on enclosed lands and public ranges' as the same refers to tame animals not those wild by nature,"

and, therefore, that plaintiff was engaged in covered employment.

It is the defendant's contention that the word "livestock" in § 72–105A is used in its generic sense and includes all domestic animals; that mink raised in captivity for breeding and pelting purposes are domestic animals; and that the business of raising mink for such purposes is therefore an agricultural pursuit.

Both parties cite and rely upon Meader v. Unemp. Comp. Div., 64 Idaho 716, 136 P.2d 984, 987. That proceeding was brought by Meader, the owner and operator of a trout farm, challenging a determination by the unemployment compensation division that the employer was liable for unemployment compensation contributions. The exemption from coverage under the Unemployment Compensation Law at that time included "the raising, feeding or managing of livestock, bees or poultry." Laws 1941, c. 182, § 18–5(f).

This court held that " 'livestock' is quite commonly thought of as including only the more ordinary forms of domesticated animals, such as cattle, sheep, hogs and horses;" that the term "livestock" used in its generic sense would include all do-

-mestic animals, "which, it may be con-ceded," would include domestic trout; but the addition of "bees and poultry" to the term "livestock" indicates that the legislature did not use the word "livestock" in its generic sense, but rather in its popular sense; and that so used it included only the more ordinary forms of domestic animals, and did not include domestic trout.

Defendant argues that since the word "livestock" is used in the Workmen's Compensation Law without the addition of any named species limiting its scope, it should be applied in its generic sense, and so applied would include domestic mink. We recognize the merit of this argument, but there are other factors which we must consider.

■ This court has repeatedly held that the Workmen's Compensation Law must be liberally construed with the view to effect its purpose and promote justice. I.C. § 72–102 and annotations thereunder. Idaho Code, § 72–101 provides that the act shall apply "to all private employment not expressly excepted by the provisions of section 72–105." In pursuance of this policy of the law, this court will not restrict its coverage by construction in cases where such restriction is not fairly required by the terms of the act itself. Accordingly we have held that an employer claiming exemption from coverage under § 72–105 has the burden of proving that his employment is not covered. Gloubitz

v. Smeed Brothers, 53 Idaho 7, 21 P.2d 78. Cf. Mundell v. Swedlund, 59 Idaho 29, 80 P.2d 13; Mulanix v. Falen, 64 Idaho 293, 130 P.2d 866.

Defendant cites the definitions of agricultural labor contained in several acts of Congress which expressly include, in addition to livestock, the raising of and caring for "fur-bearing animals and wild life"—Insurance Contributions Act, 26 U.S.C.A. § 3121(g); Unemployment Tax Act, 26 U.S.C.A. § 3306(k); Social Security Act, 42 U.S.C.A. § 410(f) (1)—and also our Employment Security Law, I.C. § 72–1304 (a) (1), patterned after the federal act. The latter in pertinent part provides that the term "agricultural labor" includes all services performed:

"(1) On a farm, in the employ of any person in connection with cultivating the soil, or in connection with raising or harvesting any agricultural or horticultural commodity, including the raising, shearing, feeding, caring for, training, and management of livestock, bees, poultry, and furbearing animals and wildlife."

■ It appears to be defendant's contention that the word "livestock" as used in § 72–105A should be so construed as to harmonize it with the other acts referred to. While it is proper to consider the federal acts and decisions and the decisions of other states in determining what consti-

tutes an agricultural pursuit or a definition of "livestock" where the meaning is in doubt, we are not at liberty to amend the Workmen's Compensation Act by incorporating therein the exceptions specifically set out in the federal acts or in our employment security act. Space v. Division of Empl. Sec., Etc., 60 N.J.Super. 380, 159 A.2d 131; Pioneer Potato Company, Inc., v. Division of Empl. Sec., Etc., 17 N.J. 543, 111 A.2d 888, 53 A.L.R.2d 397.

Defendant also contends that by the 1951 amendment of section 72–105 the words "bees and poultry" were eliminated therefrom, thereby indicating a legislative intent to broaden the term "livestock." The 1951 amendment (S.L.1951, ch. 233, pp. 470–71) made no change in the definition of "agricultural pursuits." The language here involved has remained the same since it was added to the section in 1931. S.L.1931, ch. 222, p. 436.

The fact that the legislature has amended section 72–105 several times during the period in which the various federal definitions were adopted, and once since our employment security law was adopted, without broadening the definition of "livestock" to specifically include fur-bearing animals, is rather to be construed as a refusal of the legislature to broaden the exemption from workmen's compensation coverage.

In 1941 the Wisconsin Supreme Court held that raising of foxes was not "farm-ing" and that the labor involved therein was not "farm labor" within the meaning of the state's Workmen's Compensation Act. Eberlein v. Industrial Commission, 237 Wis. 555, 297 N.W. 429. In 1942 the Wisconsin court held that the labor involved in fox farming was not "farm labor" within the meaning of the state's Unemployment Compensation Act of 1935. Cedarburg Fox Farms, Inc. v. Industrial Commission, 241 Wis. 604, 6 N.W.2d 687.

In Maus v. Bloss, 265 Wis. 627, 62 N.W. 2d 708, the court had before it an action for injury under the state's "safe-place" statute. The defendant employer, a mink farmer, claimed exemption from the provisions of the act, which excluded "farm labor." In support of his contention that the farm labor exclusion should be held to include the raising of fur-bearing animals, the defendant cited a provision of the fish and game law, enacted in 1945, Laws 1945, c. 563, which provided that the raising of fur-bearing animals including mink, "shall be deemed an agricultural pursuit" and that such animals "shall be deemed domestic animals." The court held that the amendment to the fish and game statute was exclusively applicable to fish and game and could not be construed as indicating a purpose on the part of the legislature to broaden the exemption provided for farmers under the "safe-place" statute.

Defendant in this case also cites the similar provision of our fish and game law,

I.C. § 36–305, declaring fur-bearing animals, including mink, raised in captivity, to be domestic animals. This section is limited in its application to the purposes of the fish and game law, and does not affect the exemption from workmen's compensation coverage of those engaged in agricultural pursuits as defined in § 72–105A.

In Maus v. Bloss, supra [265 Wis. 627, 62 N.W.2d 711], the court also called attention to the fact that in 1939, Laws 1939, c. 372, the Wisconsin legislature had amended the state's Unemployment Compensation Act to include in the exemption the raising of "fur-bearing animals and wild life;" and in 1947, Laws 1947, c. 456, had amended the state's Workmen's Compensation Act to exempt specifically the raising of "fur bearing animals, wild life or aquatic life." The defendant contended that such amendments were to be regarded as clarifications of the existing exemptions contained in those acts. The court rejected this contention and held that the amendments indicated a legislative intent to broaden the exemption, not to clarify it.

We conclude that the word "livestock" as used in § 72–105A has reference to and includes domestic animals ordinarily found upon farms and public ranges and not to wild life raised in captivity, and that both plaintiff and defendant were engaged in covered employment. Big Wood Canal Co. v. Unemployment Comp. Div., 61 Idaho 247, 100 P.2d 49; Mulanix v. Falen, 64 Idaho 293, 130 P.2d 866; Krobitzsch v. Industrial Acc. Comm., 181 Cal. 541, 185 P. 396; Tucker v. Newman, 217 Minn. 473, 14 N.W.2d 767; In re Bridges, 287 N.Y. 782, 40 N.E.2d 648; Vande v. Mattison, 4 A.D.2d 910, 167 N.Y.S.2d 67.

■ After plaintiff had procured medical and hospital care he presented bills therefor to defendant. At that time defendant asked plaintiff to see defendant's doctor. This, plaintiff did not do. Defendant offered no showing that plaintiff's compensation or medical expenses were enlarged by improper or inadequate medical or hospital care. Plaintiff was not asked to submit to an examination by defendant's doctor, under I.C. § 72–401. The findings of the Board that the medical and hospital expenses incurred by plaintiff were reasonable, and that defendant was not prejudiced by the fact that plaintiff was treated by his own doctor, were proper.

The award is affirmed.

Costs to respondent.

SMITH, KNUDSON, McQUADE and McFADDEN, JJ., concur.