GALLEGOS v GLASER CRANDELL COMPANY

Opinion of the Court

1. Workmen's Compensation—Constitutional Law—Equal Protection—Agricultural Workers.

A section of the Workmen's Compensation Act of 1969, which excludes agricultural workers paid on a piecework basis and those agricultural workers who work less than 35 hours per week and/or 13 consecutive weeks for the same employer from compensation benefits, violates rights of plaintiffs who were agricultural workers employed on a seasonal basis to equal protection provided for in the state and Federal Constitutions (MCLA 418.115[d]).

2. Evidence—Judicial Notice—Appeal and Error—Workmen's Compensation.

Taking judicial notice of "facts" solely on the basis of assertions contained in briefs would be improper since the "facts" are not of such certainty as to permit taking judicial notice of them for the first time in an appellate court where no effort was made to place the "facts" in the record by requesting that the workmen's compensation hearing referee take judicial notice of them or by some other proof and no opportunity was afforded plaintiffs' employer to except to or controvert the taking of judicial notice of these "facts".

3. Workmen's Compensation—Private Employment—Public Employment.

The scheme for workmen's compensation has radically changed since the enactment of the first Michigan workmen's compensation act, which was largely an optional one both as to employ-

References for Points in Headnotes
[1, 7, 9–11] 58 Am Jur, Workmen's Compensation § 15.
[2] 5 Am Jur 2d, Appeal and Error § 739 et seq.
[3] 58 Am Jur, Workmen's Compensation § 121.
[4–6, 12–15, 17, 19, 20] 58 Am Jur, Workmen's Compensation § 97.
[8, 16] 16 Am Jur 2d, Constitutional Law § 494 et seq.
[18] 5 Am Jur 2d, Appeal and Error § 962 et seq.

ers and employees; now the act purports to cover the entire field of employment in both the private and public sectors (1912 PA [1st Ex Sess] 10; MCLA 418.101 *et seq.*).

4. WORKMEN'S COMPENSATION—CLASSIFICATION—AGRICULTURAL WORKERS.

There is no basis for distinguishing the work of a laborer who drives a truck at a factory from a laborer who drives one on the farm or for any one of numerous other labor activities "on the farm" as distinguished from the same activity in industry, wholesaling, retailing, or building; for singling out for an exclusion piecework "on the farm" but not elsewhere and for a special definition of "weekly wage" for farm labor as distinguished from any other type of labor as provided by the Workmen's Compensation Act (MCLA 418.115[d]).

5. WORKMEN'S COMPENSATION—CLASSIFICATION—AGRICULTURAL WORKERS—DISCRIMINATION.

Agricultural employers, regardless of the skills of their employees or the activities engaged in, are accorded a special treatment and classification of their employees in the Workmen's Compensation Act not accorded any other private or public employer; such treatment is impermissible, clearly discriminatory and has no rational basis (MCLA 418.115[d], 418.155[1]).

SEPARATE OPINION

T. G. KAVANAGH, J.

6. WORKMEN'S COMPENSATION—CLASSIFICATION—AGRICULTURAL WORKERS—DISCRIMINATION.

*Agricultural employers, regardless of the skills of their employees or the activities engaged in, are accorded a special treatment and classification of their employees in the Workmen's Compensation Act not accorded any other private or public employer; such treatment as applied to the excluded workers is impermissible and discriminatory (MCLA 418.115[d], 418.155[1]).*

7. CONSTITUTIONAL LAW—STATUTES—CLASS LEGISLATION—RACE—RELIGION—POLITICAL BELIEFS—VOTING—COMPELLING GOVERNMENTAL INTEREST.

*Classification is considered to be "inherently suspect" and a compelling governmental interest must be shown if the classification is to be sustained where the class affected is one limited by race, religious creed, or political beliefs; similarly if the interest affected is one considered "fundamental" such as the*

*right to vote, a compelling governmental interest must be shown.*

8. STATUTES—RACE.

*Legislation affecting particular racial groups is always viewed with suspicion and subjected to the closest scrutiny.*

9. WORKMEN'S COMPENSATION—CONSTITUTIONAL LAW—CLASSIFICATION —AGRICULTURAL WORKERS—EQUAL PROTECTION.

*Michigan's Workmen's Compensation Act, which excludes agricultural workers paid on a piecework basis and those agricultural workers who work less than 35 hours per week and/or 13 consecutive weeks for the same employer from compensation benefits, appears to have a rational basis in light of the difficulty of administering the act involving such a mobile labor force but a court is not confined to a sterile examination of a statute itself, but must look to its effect and such effect alone may dictate a finding that equal protection has been denied (MCLA 418.115[d]).*

10. CONSTITUTIONAL LAW—EQUAL PROTECTION—CLASS LEGISLATION— WEALTH.

*Classification based on wealth alone has never been held to be "inherently suspect", but wealth is a factor which is given great weight in determining whether there has been a denial of equal protection (US Const, Am XIV; Const 1963, art 1, § 2).*

11. CONSTITUTIONAL LAW—EQUAL PROTECTION.

*The concept of equal protection, in any particular application, is not capable of precise definition; it cannot be confined by rigid standards and analytical techniques (US Const, Am XIV; Const 1963, art 1, § 2).*

12. CONSTITUTIONAL LAW—WORKMEN'S COMPENSATION—AGRICULTURAL WORKERS—COMPELLING GOVERNMENTAL INTEREST.

*No compelling governmental interest that would justify the exclusion from workmen's compensation of those agricultural workers who are paid on a piecework basis and those agricultural workers who work less than 35 hours per week and/or 13 consecutive weeks for the same employer has been demonstrated (MCLA 418.115[d]).*

13. WORKMEN'S COMPENSATION—PIECEWORK EMPLOYEES—STATUTES— DISCRIMINATORY LEGISLATION.

*Discriminatory legislation excepting piecework employees and those excepting persons not employed 35 hours a week for 13*

consecutive weeks for the same employer from workmen's compensation benefits cannot be validated in the interest of preferring a particular industry (MCLA 418.115[d]).

14. WORKMEN'S COMPENSATION—CONSTITUTIONAL LAW—PIECEWORK EMPLOYEES.

Portions of the Workmen's Compensation Act excepting piece-work employees and those excepting persons not employed 35 hours a week for 13 consecutive weeks for the same employer are in violation of the United States and Michigan Constitutions; therefore, these sections should be stricken from the statute (US Const, Am XIV; Const 1963, art 1, § 2; MCLA 418.115[d]).

OPINION CONCURRING IN PART AND DISSENTING IN PART

WILLIAMS, J.

15. WORKMEN'S COMPENSATION—CONSTITUTIONAL LAW—EQUAL PROTECTION—PIECEWORK—WAGES.

The subclassification in the Workmen's Compensation Act creating a difference between piecework and wage remuneration for employees doing similar work under otherwise similar conditions is violative of equal protection; it is altogether unreasonable and lacking in rational basis (MCLA 418.115[d]).

16. STATUTES—CLASSIFICATION—APPEAL AND ERROR—FINDINGS OF FACT.

The effect of a statute in a particular case may be the basis in combination with other factors for the standard of close scrutiny associated with suspect classification; however, facts presented in appellate briefs are not sufficiently comprehensive to establish a suspect classification especially in the light of the absence of any findings of fact at all on this issue on the record.

17. WORKMEN'S COMPENSATION—AGRICULTURAL WORKERS—CLASSIFICATION.

Some differences in classifications of agricultural workers in the Workmen's Compensation Act, that differ from other kinds of workers, may not be supported by a rational basis but it may be that other differences are supportable by some rational basis if properly argued (MCLA 418.115).

18. APPEAL AND ERROR—RECORD—REMAND.

The better part of judicial prudence would be to remand a case to the Michigan Court of Appeals without prejudice to produce such a record in such a manner as may be necessary to consider other issues as may be adequately presented for deci-

*sion where there is not presently before the Michigan Supreme Court a sufficient decisional and factual record for resolution of those other issues.*

DISSENTING OPINION

T. E. BRENNAN, J.

19. WORKMEN'S COMPENSATION—MIGRANT FARM WORKERS—DISCRIMINATION.

*The categories established, in a section of the Workmen's Compensation Act, do not discriminate against migrant farm workers; indeed, a subsection of the section provides a special remedy for migrant farm workers which is not provided for non-agricultural workers (MCLA 418.115).*

20. WORKMEN'S COMPENSATION—LEGISLATURE—FARMS—EMPLOYERS—MEDICAL INSURANCE.

*The Legislature has attempted to draw a line between small farms and big farms in sections of the Workmen's Compensation Act; big farms are treated exactly like any other employer —agricultural or non-agricultural—and little farms, unlike other little gas stations, little stores or casual residential employers, are required to carry medical insurance under those sections (MCLA 418.115, 418.315).*

Appeal from Court of Appeals, Division 3, R. B. Burns, P. J., and Fitzgerald and J. H. Gillis, J.J., affirming Workmen's Compensation Appeal Board. Submitted April 5, 1972. (No. 9 April Term 1972, Docket No. 53,541.) Decided December 21, 1972.

34 Mich App 489 reversed.

Frank S. Gallegos and Mary Gutierrez presented their claims for workmen's compensation against Glaser Crandell Company and Travelers Insurance Company. Compensation denied. Plaintiffs appealed to the Court of Appeals. Affirmed. Plaintiffs appeal. Reversed and remanded to Workmen's Compensation Commission.

*Marcus, McCroskey, Libner, Reamon & Williams* (by *J. Walter Brock)*, for plaintiffs.

*Smith, Haughey, Rice, Roegge & Gould (Thomas R. Tasker)*, for defendant.

*Amicus Curiae:* Michigan Legal Services Assistance Program (by *Alan W. Houseman)*.

ADAMS, J. I agree with Justice T. G. KAVANAGH that the provisions of § 115(d) of 1969 PA 317 (MCLA 418.115[d]; MSA 17.237[115][d]), violate plaintiffs' rights to equal protection provided for in the Constitutions of the United States and the State of Michigan. However, I arrive at this conclusion by a somewhat different route. Certain factual stipulations were entered into at the workmen's compensation hearing before Referee Johnson on February 16, 1970. They constitute the facts for consideration and determination of the questions involved in this case.

It was stipulated that injuries to plaintiffs occurred while they were working for Glaser Crandell, a packing company; that they were migrant workers; that they were on premises leased by Glaser Crandell at the time they were injured; the number of hours worked by plaintiffs for Glaser Crandell; the dates thereof and the dates of injury; that medical benefits were paid under a voluntary arrangement but no weekly disability benefits were paid. The facts as to plaintiffs' injuries and whether or not the injuries arose out of or during the course of employment were not determined.

There are no facts *in this record* from which I can conclude that the classification established by the exceptions contained in the Michigan Workmen's Compensation Act—"seasonal agricultural workers—is largely composed of Chicanos, Blacks

and American Indians." Nor is there in this record a basis for a finding that: "Seasonal agricultural workers comprise one of the poorest segments of our society. The majority of these workers have earnings which are below the poverty level." All of these "facts" may be true but they are not facts of which this Court, at this stage in the proceedings, can properly take judicial notice. No effort was made to place these "facts" in the record by requesting that the hearing referee take judicial notice of them or by some other proof. No opportunity was afforded defendant to except to or controvert the taking of judicial notice of these "facts". To do so now solely on the basis of assertions contained in briefs would be improper since these "facts" are not of such certainty as to permit taking judicial notice of them for the first time in an appellate court. See *Winekoff v Pospisil,* 384 Mich 260, 268–269 (1970).

Our examination must be confined to the Workmen's Compensation Act of 1969 (1969 PA 317). Section 111 (MCLA 418.111; MSA 17.237[111]) has two classifications of employers—public and private and a single classification of employees—"every employee". It reads:

> *"Every employer, public and private, and every employee,* unless herein otherwise specifically provided, shall be subject to the provisions of this act and shall be bound thereby." (Emphasis added.)

Section 115 of the act (MCLA 418.115; MSA 17.237[115]) is quoted in full in Justice T. E. Brennan's opinion. It has three classifications of employers—all private employers, all public employers, and all agricultural employers.

Section 151 (MCLA 418.151; MSA 17.237[151]), states:

"(1) The following shall constitute employers subject to the provisions of this act:

"(a) The state and each county, city, township, incorporated village and school district therein and each incorporated public board or public commission in this state authorized by law to hold property and to sue or be sued generally.

"(b) *Every person, firm and private corporation,* including any public service corporation, who has any person in service under any contract of hire, express or implied, oral or written." (Emphasis added.)

From the above sections, it can readily be seen that the scheme for workmen's compensation has radically changed since the enactment of the first Michigan workmen's compensation act (1912 PA [1st Ex Sess] 10). Then the act was largely an optional one both as to employers and employees. Now the act purports to cover the entire field of employment in both the private and public sectors.

Agricultural employers are dealt with in section 115(d) and (e), MCLA 418.115; MSA 17.237(115). Sections 115(d) and (e) (all agricultural employers), parallel sections 115(a) and (b) (all private employers). The sections, with underlining added for emphasis, are set forth in two columns below for ease in comparing the difference in treatment.

| Section 115(a) | Section 115(d) |
|---|---|
| "All private employers, other than agricultural employers, who regularly employ 3 or more employees at 1 time." | "All agricultural employers of 3 or more regular employees paid hourly wages or salaries, and not paid on a piecework basis, who are employed 35 or |

Section 115(d) (Cont'd)

more hours per week by that same employer for 13 or more consecutive weeks during the preceding 52 weeks. Coverage shall apply only to such regularly employed employees. The average weekly wage for such an employee shall be deemed to be the weeks worked in agricultural employment divided into the total wages which the employee has earned from all agricultural occupations during the 12 calendar months immediately preceding the injury, and no other definition pertaining to average weekly wage shall be applicable."

Section 115(b)

"All private employers, other than agricultural employers, who regularly employ less than 3 employees if at least 1 of them has been regularly employed by that same employer for 35 or more hours per week for 13 weeks or longer during the preceding 52 weeks."

Section 115(e)

"All agricultural employers of 1 or more employees who are employed 35 or more hours per week by that same employer for 5 or more consecutive weeks shall provide for such employees, in accordance with rules established by the director, medical and hospital coverage as set

Section 115(e) (Cont'd)

forth in section 315 for all personal injuries arising out of and in the course of employment suffered by such employees not otherwise covered by this act. The provision of such medical and hospital coverage shall not affect any rights of recovery that an employee would otherwise have against an agricultural employer and such right of recovery shall be subject to any defense the agricultural employer might otherwise have. Section 141 shall not apply to cases, other than medical and hospital coverages provided herein, arising under this subdivision nor shall it apply to actions brought against an agricultural employer who is not voluntarily or otherwise subject to this act. No person shall be considered an employee of an agricultural employer if the person is a spouse, child or other member of the employer's family, as defined in subdivision (b) of section 353 residing in the home or on the premises

Section 115(e) (Cont'd)

of the agricultural employer.

"All other agricultural employers not included in subdivisions (d) and (e) shall be exempt from the provisions of this act."

Section 155(1) of the act (MCLA 418.155; MSA 17.237[155]), defines an "agricultural employer". It reads:

"(1) An agricultural employer means one who hires *a person performing services:*

"(a) *On a farm,* in connection with cultivating the soil, or in connection with raising or harvesting any agricultural or horticultural commodity, including the raising, shearing, feeding, caring for, training and management of livestock, bees, poultry and fur-bearing animals and wildlife.

"(b) In the employ of the owner or tenant or other operator of a farm, in connection with the operation, management, conservation, improvement or maintenance of such farm and its tools and equipment or in salvaging timber or clearing land of brush and other debris left by a hurricane, if the major part of such service is performed on a farm.

"(c) In connection with the production or harvesting of maple syrup or maple sugar or any commodity defined as an agricultural commodity or in connection with the raising or harvesting of mushrooms or in connection with the hatching of poultry or in connection with the operation or maintenance of ditches, canals, reservoirs or waterways used exclusively for supplying and storing water for farming purposes.

"(d) *In handling, planting, drying, packing, packaging, processing, freezing, grading, storing or delivering to storage or to market or to a carrier for transporta-*

tion to market, any agricultural or horticultural com-
modity but only if such service is performed as an
incident to ordinary farming operations or in the case
of fruits and vegetables as an incident to the prepara-
tion of such fruits or vegetables for market. The provi-
sions of this subdivision shall not be deemed to be
applicable with respect to service performed in connec-
tion with commercial canning or commercial freezing or
in connection with any agricultural or horticultural
commodity after its delivery to a terminal market for
distribution for consumption.

"(2) As used in this section, farm includes stock,
dairy, poultry, fruit, fur-bearing animals and truck
farms, plantations, ranches, nurseries, ranges, green-
houses or other similar structures used primarily for
the raising of agricultural or horticultural commodities
and orchards." (Emphasis added.)

In Fox v Employment Security Commission, 379
Mich 579, 589 (1967), it was said:

" ' "Legislation which, in carrying out a public pur-
pose for the common good, is limited by reasonable and
justifiable differentiation to a distinct type or class of
persons is not for that reason unconstitutional because
class legislation, if germane to the object of the enact-
ment and made uniform in its operation upon all
persons of the class to which it naturally applies; but if
it fails to include and affect alike all persons of the
same class, and extends immunities or privileges to one
portion and denies them to others of like kind, by
unreasonable or arbitrary subclassification, it comes
within the constitutional prohibition against class
legislation." ' "

In DeMonaco v Renton, 18 NJ 352; 113 A2d 782
(1955), a newsboy was injured in an automobile
accident. The Workmen's Compensation Act con-
tained an exclusionary clause which stated that a
person selling newspapers should not be consid-
ered as an employee. He was denied recovery by
the Workmen's Compensation Division. On appeal,

the Supreme Court found that the exclusionary clause regarding the sale of newspapers would include store clerks. Other clerks in the same store who did not sell newspapers would be covered while those who did, even though incidentally, would not. In finding the exclusion to be unconstitutional as in violation of equal protection, the Court said, "[t]he product which they are handling, newspapers and magazines, affords no logical reason for their separate classification." (p 360.)

In *Washington National Ins Co v Board of Review,* 1 NJ 545; 64 A2d 443 (1949), the Unemployment Compensation Act excluded agents of insurance companies, exclusive of industrial life insurance agents. This classification was found to have no rational basis. The Court said:

"What we have is a subdivision of a wholly natural class without any reason whatever related to the service of the statutory object or the public interest in any of its diverse manifestations." (p 555.)

In *Burch v Foy,* 62 NM 219; 308 P2d 199 (1957), a minimum wage act required variety store employees to be paid 75 cents per hour minimum but permitted drug store employees to be paid 50 cents per hour minimum. The Court found this classification to be arbitrary and oppressive because of lack of uniformity within the class.

Turning back to the present case, from an examination of the definition of "agricultural employer" (section 155[1]), it will readily be seen that it includes all possible kinds of work "on a farm," such as plowing, planting, harvesting, maintenance of machinery, bookkeeping, processing, canning, raising cattle or other livestock. The work

can vary from the most menial (digging ditches) to the most exacting (expert cross-pollination of plants or flowers) as long as it is "on a farm."

There is no basis for distinguishing the work of a laborer who drives a truck at a factory from a laborer who drives one on the farm or for any one of numerous other labor activities "on the farm" as distinguished from the same activity in industry, wholesaling, retailing, or building. There is no basis for singling out for an exclusion piecework "on the farm" but not elsewhere. There is no basis for a special definition of "weekly wage" for farm labor as distinguished from any other type of labor. "All private employers" come under the act if they regularly employ three or more employees at one time. On the other hand, only "agricultural employers" who employ 3 or more employees, not on piecework, 35 or more hours per week by the same employer for 13 or more weeks during the preceding 52 weeks come under the act.

Nor are the exclusions from the act allowed agricultural employers under § 115(d) remedied by the treatment accorded agricultural employees under § 115(e). It sets up a special classification; employers of 1 or more employees who are employed 35 or more hours per week by that employer for 5 or more consecutive weeks. The employer must accord those employees certain medical and hospital benefits if they are not otherwise covered by the act.

If the argument is that this creates special benefits for a class of agricultural workers not covered under § 115(d), then it is clearly discriminatory as to all other employees in private employment who are not covered under 115(a) or (b). If the argument is that the benefits are illusory since the class created is next to non-existent, then the

exclusions under § 115(d) are all the more to be condemned.

Finally, the argument that § 115(e) is especially tailored to meet the problems of the small farmer and his occasional employees fails to account for the need for similar treatment as to the small businessman—grocer, clothier, butcher—or as to the small contractor—plumber, carpenter, roofer—or as to numerous other categories of small employers and their employees who are not accorded this treatment.

From the above, it will be seen that while Justice T. G. Kavanagh posits the reasonableness of the agricultural classification, in order to consider the propriety of the subclassification of "agricultural workers" which results from the exclusion of certain of them from coverage, my difficulty is with the classification of agricultural employers. Agricultural employers, regardless of the skills of their employees or the activities engaged in, are accorded a special treatment and classification of their employees not accorded any other private or public employer. Such treatment is impermissible, clearly discriminatory and has no rational basis.

I vote to reverse and remand to the Workmen's Compensation Commission for determination of plaintiffs' claims.

I would award costs to plaintiffs.

T. M. Kavanagh, C. J., and Black and Swainson, JJ., concurred with Adams, J.

T. G. Kavanagh, J. Justice Adams' opinion concludes that on its face MCLA 418.115(d); MSA 17.237 (115)(d), denies equal protection of the laws to those persons thereby excluded from coverage under Michigan's workmen's compensation law. He writes "such treatment is impermissible,

clearly discriminatory and has no rational basis". We agree that such treatment is impermissible and discriminatory. We concur in the decision to "reverse and remand to the Workmen's Compensation Commission for determination of plaintiffs' claims".

Our vote to reverse and remand, however, is based upon our persuasion that there is a rational basis for the distinction drawn by the statute between agricultural and other employees, but the distinguishing provisions are otherwise invalid under the United States and Michigan Constitutions.

We granted leave in this case to review a decision of the Court of Appeals[1] holding the exclusion of certain agricultural workers from the Workmen's Compensation Act was constitutional.

The facts giving rise to the question are not complicated.

Plaintiff Frank Gallegos is a Mexican-American, 38 years old. On August 2, 1967, while in the employ of defendant Glaser Crandell, Gallegos fell and sustained a fractured wrist on defendant's property. Plaintiff Mary Gutierrez, also in the employ of Glaser Crandell, sustained a fall on the same property on August 13, 1967. She received injuries to her left leg and back. Both plaintiffs are agricultural workers whom defendant employed on a seasonal basis.

After defendant refused to pay workmen's compensation benefits voluntarily, plaintiffs filed an application with the Bureau of Workmen's Compensation and asked for a hearing. Both plaintiffs and defendant requested a ruling on the constitutionality of certain portions of the Workmen's Compensation Act. The hearing referee determined that he was without authority to rule on

---

[1] 34 Mich App 489 (1971).

this issue. On appeal, the Workmen's Compensation Appeal Board held that they too were unable to rule on the constitutionality of the statute.

Plaintiffs raise two major issues on appeal. First, whether the exclusionary provisions of MSA 17.237 (115)(d)[2] violate plaintiffs' right to equal protection under the law as provided in the Constitutions of the United States[3] and the State of Michigan.[4] Second, whether the exclusionary provisions of MSA 17.237(115)(d) place an unconstitutional burden on plaintiffs' freedom of travel.

Plaintiffs argue that the exclusion from workmen's compensation benefits of those agricultural workers who are paid on a piecework basis, and those agricultural workers who do not work 35 or more hours per week for the same employer for 13 or more consecutive weeks, denies those workers the equal protection of the laws. They claim that the exceptions set forth in the statute result in the establishment of a class and the invidious discrimination against the members of that class.

We are not here concerned with the division of workers into "industrial" and "agricultural" classes. We posit the reasonableness of such classification in order to consider the propriety of the subclassification of "agricultural" workers which

[2] MCLA 418.115(d)

"(d) All agricultural employers of 3 or more regular employees paid hourly wages or salaries, and not paid on a piecework basis, who are employed 35 or more hours per week by that same employer for 13 or more consecutive weeks during the preceding 52 weeks. Coverage shall apply only to such regularly employed employees. The average weekly wage for such an employee shall be deemed to be the weeks worked in agricultural employment divided into the total wages which the employee has earned from all agricultural occupations during the 12 calendar months immediately preceding the injury, and no other definition pertaining to average weekly wage shall be applicable."

[3] US Const, Am XIV.

[4] Const 1963, art 1, § 2.

results from the exclusion of certain of them from coverage. We note that the exceptions contained in the statute do establish two separate subclasses—those agricultural workers covered by the act and those not covered by the act on account of such exceptions. It is not disputed that this latter group are seasonally employed and we will hereafter refer to them as "seasonal workers".

When classification is alleged to deny an individual equal protection of the law, such classification, as a general rule, must be shown to be unreasonable. In determining reasonableness courts usually express as a standard the equivalent of:

" '[A] distinction in legislation is not arbitrary, if any state of facts reasonably can be conceived that would sustain it.' "[5]

However, if the class affected is one limited by race, religious creed, or political beliefs, the classification is considered to be "inherently suspect", and a compelling governmental interest must be shown if the classification is to be sustained.[6] Similarly if the interest affected is one considered "fundamental" such as the right to vote, a compelling governmental interest must be shown.

The doctrine of "inherently suspect" classifications has developed with regard to those classes or groups which have traditionally been the target of discrimination. When such a class is affected by the legislation, the constitutional infirmity asserted can be avoided only upon a showing of a compelling state interest which justifies the law. Legislation affecting particular racial groups is

[5] *New York Rapid Transit Corp v New York,* 303 US 573; 58 S Ct 721; 82 L Ed 1024 (1938).

[6] Harlan dissent, *Shapiro v Thompson,* 394 US 618; 89 S Ct 1322; 22 L Ed 2d 600 (1969).

always viewed with suspicion and subjected to the closest scrutiny.

Similarly, our society views those interests termed "fundamental" with such esteem, that their restriction by classification can only be sanctioned upon the demonstration of a compelling state interest.

If the disparate treatment were expressly based on race, for example, if the statute excluded Chicanos, Blacks and American Indians from coverage as agricultural workers, we would have no difficulty in finding it invidiously discriminatory absent a demonstration of a compelling state interest in such disparate treatment.

The classification in Michigan's statute however appears to have a rational basis in light of the difficulty of administering the act involving such a mobile labor force. In this circumstance we must look to its impact. A court is not confined to a sterile examination of the statute itself, but must look to its effect.[7] Such effect alone may dictate a finding that equal protection has been denied. This is true because when a classification is made by a statute we must look first to its reasonableness and then to its effect—direct and indirect. If the effect is direct we have little trouble in determining discrimination. If the direct effect is not constitutionally offensive however, we must look for any indirect effect. An indirect effect is no more legitimate than a direct effect, and we must assay the effect apart from the purpose. "The existence of a permissible purpose cannot sustain an action that has an impermissible effect."[8]

It is not disputed that the classification established by the exceptions contained in Michigan's

[7] *Yick Wo v Hopkins,* 118 US 356; 6 S Ct 1064; 30 L Ed 220 (1886).

[8] *Wright v Emporia,* 407 US 451; 92 S Ct 2196; 32 L Ed 2d 51 (1972).

Workmen's Compensation Act which we are considering here—seasonal agricultural workers—is largely composed of Chicanos, Blacks and American Indians.[9]

Seasonal agricultural workers comprise one of the poorest segments of our society. The majority of these workers have earnings which are below the poverty level.[10] Indeed such earnings are often less than would be received if the workers went on welfare. While a classification based on wealth alone has never been held to be "inherently suspect", wealth is a factor which is given great weight in determining whether there has been a denial of equal protection.[11] Furthermore, the combination of wealth and a possible fundamental interest as found in *Shapiro, supra* gives propriety to this consideration.

In any particular application, the concept of equal protection is not capable of precise definition. It cannot be confined by rigid standards and analytical techniques. Thus an amalgam of factors, no one of which, if taken by itself would require a showing of compelling interest, in our view might well require it.

This is particularly true since as we have said, an equal protection examination may properly focus on the effect of governmental activity, as well as on the purpose.

No compelling governmental interest that would justify the exclusion from workmen's compensation of those agricultural workers who are paid on a piecework basis and those agricultural workers

---

[9] Real, "Socio-Cultural Patterns Among Michigan Migrant Farm Workers," Rural Manpower Center Special Paper No 2, Michigan State University (1967). *Amicus* brief p 33.

[10] U S Department of Labor Manpower Study—1966.

[11] *Harper v Virginia Board of Elections,* 383 US 663; 86 S Ct 1079; 16 L Ed 2d 169 (1966).

who work less than 35 hours per week and/or 13 consecutive weeks for the same employer has been demonstrated.

It is true, as plaintiffs argue, that agriculture has changed considerably in the past 50 years. Mechanization and the consolidation of small farms into large tracts require the area to be viewed with an entirely new perspective. Indeed the term "farming" may have given way to "agricultural industry". The fact that seasonal agricultural workers are hired for a particular job is not determinative. Such practice is common in other industries, particularly the construction industry. Such small farms that still exist are not practically distinguishable from any other small, family operated business. Yet the exceptions applicable to agricultural workers are unique to that field, and are not carried over to other private employment.

Defendant argues that the administrative burden placed upon the agricultural employer would be too great. However, such employer already must meet the requirements of withholding tax and social security to name just two. It is also highly questionable whether the cost burden placed on the agricultural employer would be as onerous as defendant claims.[12] Even if true however, this would not constitute a compelling governmental interest. Discriminatory legislation such as we have here cannot be validated in the interest of preferring a particular industry.

We conclude that no compelling state interest has been shown. Therefore, those portions of the statute excepting piecework employees, and those excepting persons not employed 35 hours a week

[12] California and Ohio, two states wherein numerous migrant workers are employed, provide coverage for them without apparent detriment to agricultural employers.

for 13 consecutive weeks for the same employer are in violation of US Const, Am XIV and Const 1963, art 1, § 2. Therefore these sections are stricken from the statute.

Having reached the above conclusion, we find it unnecessary to express opinion whether the statute violates plaintiffs' right to travel.

Reversed and remanded to the Workmen's Compensation Commission for determination of the claim.

No costs, a matter of public interest.

WILLIAMS, J. *(concurring in part and dissenting in part).* I concur in part with and dissent in part from my Brothers Justices T. G. KAVANAGH and ADAMS. I agree with Justice KAVANAGH that the subclassification in § 115(d) of 1969 PA 317; MCLA 418.115(d); MSA 17.237 (115)(d) creating a difference between piecework and wage remuneration for employees doing similar work under otherwise similar conditions is violative of equal protection. I do not believe it is necessary, however, to say this subclassification does not further a compelling governmental interest because I view this subclassification as altogether unreasonable and lacking in rational basis.

Regarding the other parts of the statute creating a series of subclassifications applicable to agricultural workers I agree with the principal T. G. KAVANAGH espouses that the effect of a statute in a particular case may be the basis in combination with other factors for the standard of close scrutiny associated with suspect classification. However, the facts presented in the briefs are not, in my opinion, sufficiently comprehensive to establish a suspect classification especially in light of the

absence of any findings of fact at all on this issue *on the record.*

On the other hand, I cannot agree completely with Justice Adams that all classifications of agricultural workers differ from other kinds of workers is unsupported by a rational basis. There are some differences between § 115(a) *vis-a-vis* § 115(d) and § 115(b) *vis-a-vis* § 115(d) that may not be supported by a rational basis but it may be that other differences are supportable by some rational basis if properly argued.

However, I do not find that the Court of Appeals ruled on the additional provision of "35 or more hours per week by [the] same employer for 13 or more consecutive weeks during the preceding 52 weeks." Moreover in the arguments of appellants and appellee both posit the issue as piecework. (See also Workmen's Compensation Appeal Board Opinion.) The *Amicus* brief does recognize the duration problem but does not really develop it. One of the problems mentioned, for example, is that only those agricultural employees who meet the tests of § 115(d) are covered, whereas in other employment covered in § 115(b), so long as *one* employee meets the test, all are covered. Another of the problems is that agricultural employees must work 13 *consecutive* weeks under § 115(d) whereas other employees must work 13 weeks but without a requirement of consecutive work. What about the coverage of an agricultural worker for the state under § 115(c)?

In my opinion, however, there is not presently before us a sufficient decisional and factual record for resolution of these other issues. Under these circumstances, it would seem the better part of judicial prudence to remand the case to the Court of Appeals without prejudice to produce such a

record in such a manner as may be necessary to consider other issues as may be adequately presented for decision.

T. E. BRENNAN, J. *(dissenting).* I dissent.

The problem of providing workmen's compensation for migrant farm workers was considered by the Legislature in the general revision of 1969. 1969 PA 317.

Section 115 of that Act describes the categories of employers subject to the Act. That section is not quoted in full in the majority opinion.

It reads as follows:

"Sec. 115. This act shall apply to:

"(a) All private employers, other than agricultural employers, who regularly employ 3 or more employees at 1 time.

"(b) All private employers, other than agricultural employers, who regularly employ less than 3 employees if at least 1 of them has been regularly employed by the same employer for 35 or more hours per week for 13 weeks or longer during the preceding 52 weeks.

"(c) All public employers, irrespective of the number of persons employed.

"(d) All agricultural employers of 3 or more regular employees paid hourly wages or salaries, and not paid on a piecework basis, who are employed 35 or more hours per week by that same employer for 13 or more consecutive weeks during the preceding 52 weeks. Coverage shall apply only to such regularly employed employees. The average weekly wage for such an employee shall be deemed to be the weeks worked in agricultural employment divided into the total wages which the employee has earned from all agricultural occupations during the 12 calendar months immediately preceding the injury, and no other definition pertaining to average weekly wage shall be applicable.

"(e) All agricultural employers of 1 or more employees who are employed 35 or more hours per week by that same employer for 5 or more consecutive weeks

shall provide for such employees, in accordance with rules established by the director, medical and hospital coverage as set forth in section 315 for all personal injuries arising out of and in the course of employment suffered by such employees not otherwise covered by this act. The provision of such medical and hospital coverage shall not affect any rights of recovery that an employee would otherwise have against an agricultural employer and such right of recovery shall be subject to any defense the agricultural employer might otherwise have. Section 141 shall not apply to cases, other than medical and hospital coverages provided herein, arising under this subdivision nor shall it apply to actions brought against an agricultural employer who is not voluntarily or otherwise subject to this act. No person shall be considered an employee of an agricultural employer if the person is a spouse, child or other member of the employer's family, as defined in subdivision (b) of section 353 residing in the home or on the premises of the agricultural employer.

"All other agricultural employers not included in subdivisions (d) and (e) shall be exempt from the provisions of this act."

The categories established do not discriminate against migrant farm workers. Indeed, subsection 115(e) provides a special remedy for migrant farm workers which is not provided for non-agricultural workers.

It is obvious that the Legislature has attempted to draw a line between small farms (subsection 115[e]) and big farms (subsection 115[d]). Big farms are treated exactly like any other employer—agricultural or non-agricultural. Little farms, unlike little gas stations, little stores or casual residential employers, are required to carry medical insurance under § 315.

Thus, if I employ a handyman to work around my house for six weeks, I am not subject to the Workmen's Compensation Act. (Section 118[2].) If a

farmer puts on a hired hand for the same length of time, medical and hospital coverage must be provided. Where is the discrimination?