543 P.2d 167

**James R. GOODSON, Claimant-Appellant,**

v.

**L. W. HULT PRODUCE COMPANY (non-insured), Defendant-Respondent.**

**No. 11771.**

Supreme Court of Idaho.

Nov. 21, 1975.

Jay B. Gaskill, of Albaugh, Smith & Pike, Idaho Falls, for claimant-appellant.

John D. Hansen, of Hansen & Boyle, Idaho Falls, for defendant-respondent.

McFADDEN, Justice.

Claimant-appellant James R. Goodson filed his claim with the Industrial Commission seeking compensation for injuries allegedly sustained while employed by the defendant-respondent L. W. Hult Produce Company.

At all times pertinent to this dispute, respondent L. W. Hult, doing business as L. W. Hult Produce Company, was engaged in growing and marketing certified seed potatoes on approximately 350 acres of farming land near Moore, Idaho. Following the 1971 harvest, Hult stored approximately 62,000 cwt. of potatoes in three farm storage cellars where his employees sorted them to meet certification requirements. Approximately 55,000 cwt. of the total were sold and transported by truck directly from the storage cellars; the bulk of these were marketed as certified seed

potatoes and some, mainly oversized ones, were marketed as commercial potatoes. The remaining 6,500 cwt. of the total, unsuitable for sale as seed potatoes, were transported about five miles from the storage cellars to a warehouse operated by Hult situated next to the railroad. These potatoes were there washed, sorted, sacked, loaded onto railroad cars, and marketed commercially in carload quantities. To insure that he could fill individual railroad cars, Hult had an informal arrangement with three neighbors whereby their potatoes were brought to the warehouse, washed, sorted, and sacked in bags furnished by the neighbors to fill a particular railroad car for shipment. Approximately 2,755 cwt. of potatoes owned by the three neighbors were handled through the warehouse between March 2 and May 26, 1972, along with the 6,500 cwt. of potatoes owned by Hult.

Appellant Goodson was employed by Hult beginning on May 15, 1972, and continuing through May 25, 1972. During his nine days of employment with Hult, Goodson worked at both the warehouse and the storage cellars, but he spent a greater amount of time at the warehouse. On May 22, 1972, Goodson and a fellow employee each picked up one end of a hundred-pound sack of potatoes to load on a hand cart at the warehouse facility. Goodson's right foot slipped in the process and he fell upon his left knee while holding the sack of potatoes. Claimant contends this fall resulted in a need for surgery to his left knee and caused permanent partial disability for which he sought compensation. Goodson verbally informed the defendant of the injury on May 25, 1972, at which time he was advised to see a doctor, whom he visited the same day.

Goodson subsequently filed his written notice of injury and claim for compensation. Hult contested the claim, denying that the parties were covered by the Workmen's Compensation Act [1] and alleging specifically that Goodson's employment was exempt as an agricultural pursuit under I.C. § 72–212(8). Both parties submitted the issue of Goodson's coverage to the Industrial Commission of the State of Idaho upon a stipulation of facts. The Commission, by order, initially concluded that the Act covered Goodson's employment. Upon motion by Hult, the Industrial Commission later withdrew its order and received further evidence. The Commission subsequently reversed its earlier order and concluded that Goodson was exempt from the act's coverage. Goodson has appealed from this order.

The principal issue raised by this appeal is whether the Industrial Commission erred in its application of the law regarding the agricultural exemption (I.C. § 72–212(8)) to the facts of this case. After reviewing the law concerning the agricultural exemption, we have concluded that the Industrial Commission erred in its interpretation and application, and reverse the order.

■ This court repeatedly has recognized the policy that "there should be accorded to the Workmen's Compensation Act a broad and liberal construction, that doubtful cases should be resolved in favor of compensation, and that the humane purposes which these acts seek to serve leave no room for narrow technical construction." *Smith v. University of Idaho,* 67 Idaho 22, 26, 170 P.2d 404, 406 (1946). *See also Miller v. FMC Corp.,* 93 Idaho 695, 471 P.2d 550 (1970); *Kiger v. Idaho Corp.,* 85 Idaho 424, 380 P.2d 208 (1963); *Collins v. Moyle,* 83 Idaho 151, 358 P.2d 1035 (1961). A necessary corollary to the realization of the humane purposes and promotion of justice within the workmen's compensation scheme is that all exemptions from coverage, including the one for agricultural pursuits, be construed narrowly. Idaho Code section 72–203 expresses the policy that the Workmen's Compensation Act "shall apply to all public employment and to all private employment not express-

---

1. I.C. §§ 72–101—805.

ly exempt by the provisions of section 72–212." The latter section specifically enunciates an exemption from the Act's coverage for "agricultural pursuits" which include "the raising or harvesting of any agricultural or horticultural commodity * * *." I.C. § 72–212(8). Addressing the predecessor to I.C. § 72–203, this court ruled against "restrict[ing] its coverage by construction in cases where such restriction is not fairly required by the terms of the act itself." *Collins v. Moyle*, 83 Idaho 151, 155, 358 P.2d 1035, 1036 (1961). A discussion of the agricultural exemption necessarily is predicated upon these fundamental policies and purposes of workmen's compensation law.

In *Hubble v. Perrault*, 78 Idaho 448, 453, 304 P.2d 1092, 1094 (1956), this court stated that " * * * the general character of the work for which the employee was hired or is required to perform is the test of whether the labor was performed in a covered employment or in an exempt employment." The principal business of the employer governs the workmen's compensation status of an employee engaged in that enterprise and in employment incidental to it. *Hubble v. Perrault*, supra; *Bartlett v. Darrah*, 76 Idaho 460, 285 P.2d 138 (1955); *Reed v. Russell*, 67 Idaho 84, 172 P.2d 853 (1946); *Mundell v. Swedlund*, 59 Idaho 29, 80 P.2d 13 (1938). When an employer engages in a secondary enterprise which, although it may be related to the principal business, fairly can be said to be a separate and special occupation, the nature of the special business of the employer supplants the principal business as the governing factor in determining the status of an employee engaged in that second enterprise.[2] *Manning v. Win Her Stables, Inc.*, 91 Idaho 549, 428 P.2d 55 (1967); *Hubble v. Perrault, supra.*

The principal business of L. W. Hult Produce Company at the time of the injury to James R. Goodson was seed potato farming. Hult also conducted marketing operations for commercial potatoes which were found to be unsuitable for use as seed potatoes. The legal issue before the court is whether the marketing operation for commercial potatoes, conducted at a warehouse five miles distant from the seed potato storage cellars, was merely an incident to the principal business of the employer or was a special enterprise. In keeping with the long-standing policy of narrowly construing the agricultural exemption from workmen's compensation, this court will examine closely all claims that a secondary business is merely incidental to a principally agricultural operation.

The facts pertaining the commercial and seed potato operations lead to the conclusion that these two enterprises were businesses with sufficient separateness to be evaluated independently in determining workmen's compensation coverage. The physical separation of the seed potato storage cellars and commercial potato warehouse militate against the marketing facility being considered an incident of the principal business. The commercial potatoes, moreover, ended their tie with the seed potato operation when they were removed from the seed potatoes during the sorting process. While the removal of oversize potatoes from those which are to be used for seed may be incidental to Hult's principal business, the disposition of them thereafter clearly is not. An expert in the seed potato business testified before the Industrial Commission that options regarding disposition of oversize potatoes ranged from discarding them to marketing them in various manners. Hult sold some over-

---

2. This court repeatedly has recognized that the utilization of the employer's business as the guide for workmen's compensation coverage, rather than the immediate task being performed at the time of the injury, can create unequal treatment for identical tasks: "The same work done under certain conditions and under certain circumstances may be agricultural, and under other conditions and circumstances not." *Mulanix v. Falen*, 64 Idaho 293, 296, 130 P.2d 866, 867 (1942); *Backsen v. Blauser*, 95 Idaho 811, 520 P.2d 858 (1974).

sized potatoes in sacks as commercial potatoes directly from the cellars, but he had most of them transported to the warehouse from which they were shipped by rail after further handling. By choosing to have the oversized potatoes transported to the warehouse, prepared for shipment, and loaded onto railroad cars along with potatoes of other growers, Hult embarked upon a marketing enterprise distinct from his seed potato operations.

Finding the marketing operation for commercial potatoes to be a special enterprise separate from Hult's principal business, this court must examine whether such a marketing business is an enterprise covered by workmen's compensation. The agricultural exemption to workmen's compensation is defined to include the "raising or harvesting of any agricultural or horticultural commodity * * *." I.C. § 72-212(8). This court has elaborated upon that legislative statement of the limited activities which fall within the agricultural exemption. A farm product is finished and therefore passes beyond the exemption for its raising and harvesting when nothing else need be done for it to be sold, utilized, or consumed. *Backsen v. Blauser,* 95 Idaho 811, 520 P.2d 858 (1974); *Mulanix v. Falen,* 64 Idaho 293, 130 P.2d 866 (1942); *Mundell v. Swedlund,* 59 Idaho 29, 80 P.2d 13 (1938). At least by the time that Goodson loaded the sacked commercial potatoes, they were finished farm products and the harvesting had been completed. Hult had completed all handling of the potatoes and they remained merely to be shipped. At what previous time the commercial potatoes became finished farm products need not be determined.

Since Hult engaged in both a principal, exempt business and a special, covered enterprise, this court must determine which shall govern the issue of Goodson's coverage because he worked in both the storage cellars and the warehouse. This court previously has set forth the guide that the covered or exempt occupation of the employer shall determine coverage when an employee works exclusively in one or the other. *Hubble v. Perrault,* 78 Idaho 448, 304 P.2d 1092 (1956). When an employee, such as in the case at bar, works in both the covered and exempt businesses of the employer, workmen's compensation coverage attaches whenever the employee is engaged in the covered enterprise. This rule of coverage reflects the basic policy that the business of the employer rather than the specific task of the employee determines coverage; this construction merely requires that coverage shall depend upon whether the employee was engaged in the covered or exempt business of the employer at the time of injury. This rule of coverage comports with the general policy, reflected in the legislation itself and enunciated through court decisions, of narrow construction for exemptions from workmen's compensation coverage.

The claimant-appellant, James R. Goodson, also argued on appeal that the agricultural exemption in the Workmen's Compensation Act violates the equal protection clauses of the United States and Idaho Constitutions. The appellant directed the attention of the court to *Gutierrez v. Glaser Crandell Co.,* 388 Mich. 654, 202 N.W.2d 786 (1972), in which the Michigan Supreme Court accepted an equal protection challenge to the specific agricultural exemption in that state's workmen's compensation law. While this court may in an appropriate case resolve that question, the disposition of the case at bar renders it unnecessary for this court to pass upon that issue at this time.

The order of the Industrial Commission is reversed and the claim remanded for further proceedings in conformity with this opinion. Costs to appellant.

DONALDSON, SHEPARD and BAKES, JJ., concur.

McQUADE, Chief Justice (dissenting).

I do not agree with the conclusion of the majority that the sacked commercial pota-

toes were finished farm products at the time of Goodson's injury. In determining whether an employment is an "agricultural pursuit," this court has consistently adhered to the view that the term includes *every* process and step *taken* and necessary to the completion of a finished farm product.[1] It is apparent from the majority's description of Hult's commercial potato operation that sacking the oversize potatoes and loading them for shipment were integral aspects of the enterprise. These commercial potatoes were not finished farm products, within the scope of Hult's operations, until they were sacked *and* loaded for shipment to market in railroad car quantities.[2] Therefore Goodson was employed in an agricultural pursuit at the time of his injury and was not covered by workmen's compensation.

The actual loading of the potatoes was a part of an agricultural pursuit, at the very least Hult's potato operation was an agricultural pursuit until the oversize potatoes were sacked and loaded for shipment.[3] The task of loading the sacked potatoes for shipment was thus clearly incidental to Hult's commercial potato operation considered as an agricultural pursuit.[4] Previous decisions of this Court hold that a general employee engaged in an exempt business is not covered by workmen's compensation.[5] Thus Goodson is not covered because he was an employee principally engaged in an agricultural pursuit, an exempt business, because at the time of the accident he was performing a task incidental to the exempt employment.

The order of the Industrial Commission should be affirmed.

1. *Backsen v. Blauser*, 95 Idaho 811, 520 P. 2d 858 (1974) ; *Manning v. Win Her Stables, Inc.*, 91 Idaho 549, 428 P.2d 55 (1967) ; *Reedy v. Trummell*, 90 Idaho 318, 410 P.2d 654 (1966) ; *Hubble v. Perrault*, 78 Idaho 448, 304 P.2d 1092 (1956) ; *Mulanix v. Falen*, 64 Idaho 293, 130 P.2d 866 (1942) ; *Mundell v. Swedlund*, 59 Idaho 29, 80 P.2d 13 (1938) ; *Cook v. Massey*, 38 Idaho 264, 220 P. 1088 (1923).

2. *Compare Backsen v. Blauser, supra* note 1, 95 Idaho at 813, 520 P.2d at 860, and *Mundell v. Swedlund, supra* note 1, 59 Idaho at 34,

80 P.2d at 15, *with Batt v. Unemployment C. Div.*, 63 Idaho 572, 576, 123 P.2d 1004, 1005 (1942).

3. *See Mulanix v. Falen, supra* note 1.

4. *Reedy v. Trummell, supra* note 1, 90 Idaho at 321, 410 P.2d at 656.

5. *Hubble v. Perrault, supra* note 1, 78 Idaho at 453, 304 P.2d at 1094 ; *Bartlett v. Darrah*, 76 Idaho 460, 462–63, 285 P.2d 138, 139 (1955) ; *cf. Dorrell v. Norida Land & Timber Co.*, 53 Idaho 793, 800, 27 P.2d 960, 962 (1933).