663 P.2d 1094

**George M. LESPERANCE,
Claimant-Appellant,**

v.

**Clayne COOPER, dba C & M Ranches,
Employer, Defendant-Respondent.**

**No. 14415.**

Supreme Court of Idaho.

May 16, 1983.

Jerry Goicoechea and Lynn M. Luker, Boise, for claimant-appellant.

Thomas A. Miller, of Hawley, Troxell, Ennis & Hawley, Boise, for employer, defendant-respondent.

BAKES, Justice.

Appellant appeals from an Industrial Commission order dismissing his claim for workmen's compensation. The commission held that the respondent was exempt from workmen's compensation coverage because his business is an agricultural pursuit.

Before the Industrial Commission, the parties stipulated to a bifurcated procedure wherein the commission would first determine whether the employer's business was an exempt "agricultural pursuit" under I.C. § 72–212(8),[1] then decide other issues in the case, if necessary. The parties then stipulated to the following facts, allowing the commission to rule without a hearing.

1. "72–212. EXEMPTIONS FROM COVERAGE.—None of the provisions of this law shall apply to the following employments unless coverage thereof is elected as provided in section 72–213.

. . . .

Respondent and his spouse own and operate a ranch consisting of more than 540 acres. A cattle feedlot occupies 20 acres of the ranch. The remainder of the ranch consists of pasture and farmland. Cattle are fed hay from the pastures and grain while in the feedlot. Crops, such as wheat, barley and hay, are raised on the ranch for use as feed.

Appellant worked for respondent for six years. He was a foreman and supervised activities on the ranch, including the feeding of and caring for cattle, growing and harvesting grain, building and maintaining structures on the ranch, and generally overseeing the work of a handful of other employees. In November, 1979, respondent hired a separate manager for the feedlot, and appellant, after training this employee, began managing only those parts of the ranch other than the feedlot.

The majority of respondent's income comes from charging third parties for feeding their cattle. Charges for boarding cattle are made on a per head, per day basis. Despite the existence of other farming activities on the ranch, the commission specifically found that the general nature of respondents' business is a cattle feeding operation.

Appellant was injured in April of 1980, when he was sprayed by a chemical weed killer after a hose on a spraying machine broke. Appellant was spraying an irrigation ditch with the weed killer in preparation for the planting season.

The commission held that the respondent employer was engaged in an agricultural pursuit, and thus was exempt under Idaho law from providing coverage for its workers. The question presented on appeal is whether the commission erred as a matter of law in making such a determination.

Numerous Idaho cases have discussed the agricultural exemption offered under the workmen's compensation laws. One of the earliest is *Cook v. Massey,* 38 Idaho 264, 220 P. 1088 (1923). In *Cook,* the employer owned a threshing machine. The employee was engaged to aid in the operation of the machine, which traveled from farm to farm, threshing fields for individual farmers on a contract basis. This Court, after discussing the various definitions of "agriculture," "thresher," and "pursuit," ruled that an "agricultural pursuit" "include[s] every process and step taken and necessary to the completion of a finished farm product." *Id.* at 274, 220 P. 1088. This Court then went on to hold threshing to be an agricultural pursuit.

*Mundell v. Swedlund,* 59 Idaho 29, 80 P.2d 13 (1938), involved a commercial hay grinding business. Although the employer in that case relied heavily on *Cook v. Massey, supra,* and argued that hay grinding was an exempt operation, this Court disagreed for several reasons, including that hay is a finished farm product, that the employer was not a farmer, and that grinding of hay is something not commonly done by farmers. This Court held that the employee and employer "were engaged in a special work, not ordinarily done by farmers,—a business or industrial pursuit in and of itself, entirely separate and apart from farming and not an agricultural pursuit within the meaning of section 43–904, I.C.A." In *Mulanix v. Falen,* 64 Idaho 293, 130 P.2d 866 (1942), this Court was asked to consider whether the claimant, employed as a truck driver to deliver fruit and produce, was employed in an agricultural pursuit. We upheld the finding of the Industrial Commission that this was not an agricultural pursuit. It was noted that the fruit and produce being delivered were finished farm products, necessitating trips of several hundred miles, a process distinct from the production of the fruit itself. Also noted was that the "same work done under certain conditions and under certain circumstances may be agricultural, and other conditions

"(8) Agricultural pursuits. Agricultural pursuits, as used herein, shall include the raising or harvesting of any agricultural or horticultural commodity including the raising, pelting, shearing, feeding, caring for, training and management of livestock, bees, poultry and fur-bearing animals and wildlife raised in captivity, on enclosed lands and public ranges.
. . . . "

and circumstances not." *Id.* at 296, 130 P.2d 866.

In 1956, we considered a case where a person hired to pitch pea vines into threshing machines was struck by a truck. *Hubble v. Perrault,* 78 Idaho 448, 304 P.2d 1092 (1956). We reversed the Industrial Commission, ruling that the employee was engaged in an agricultural pursuit. Mentioned as factors considered by the Court are: threshing is a necessary step in farming; the threshing pursuit was not part of the employer's commercial cannery; threshing of farm crops is an agricultural pursuit. In *Collins v. Moyle,* 83 Idaho 151, 358 P.2d 1035 (1961), we considered the question of whether a laborer on a mink farm was engaged in a covered employment. At that time the definition of agricultural pursuits in our statute included only "the care-taking and handling of livestock on enclosed lands and public ranges." *Id.* at 154, 358 P.2d 1035. The question in *Collins* was whether mink could be considered livestock. This Court held it could not. The legislature has since amended the statute to include "fur bearing animals."

In 1966, we were faced with the question of whether an employee, engaged to plow and seed federal land, was engaged in an agricultural pursuit. *Reedy v. Trummell,* 90 Idaho 318, 410 P.2d 654 (1966). We held that he was, noting that the main work the employee was engaged to do, plow fields, was generally agricultural in character. In *Manning v. Win Her Stables, Inc.,* 91 Idaho 549, 428 P.2d 55 (1967), claimant had been employed to exercise and train racehorses at a race track owned by his employer. We concluded that "respondent's [claimant's] employment was not agricultural as the term is commonly understood but was special work, not ordinarily done by farmers, that partook of a commercial character entirely separate and apart from an agricultural pursuit." *Id.* at 553, 428 P.2d 55. Thus, the work was not an agricultural pursuit, and the employer was not exempt. *Backsen v. Blauser,* 95 Idaho 811, 520 P.2d 858 (1974), involved a claimant truck driver employed to haul crops from farmers' fields to a point decided by the farmer. On the date of his injury he was stacking hay which he had hauled from a field to a barn. We noted, "that Blauser's business was not agricultural as the term is commonly understood, but trucking, and thus not exempt from the workmen's compensation laws." *Id.* at 813, 520 P.2d 858. In *Goodson v. L.W. Hult Produce Co.,* 97 Idaho 264, 543 P.2d 167 (1975), the claimant was injured while loading potatoes on a truck at his employer's warehouse. After holding that the warehouse was a separate enterprise from the employer's seed potato operation, we ruled that operation of a commercial warehouse was not an agricultural pursuit.

In *Dwigans v. Olander,* 98 Idaho 744, 572 P.2d 178 (1977), the employer operated a custom manure spreading business. We noted that "Olander was not a farmer, but rather a businessman providing a limited, specific service to farmers on a contract basis. It would be incorrect to say that Olander's business constituted the 'raising and harvesting' of agricultural products." *Id.* at 745, 572 P.2d 178.

Finally, in *Kuhn v. Box Canyon Livestock, Inc.,* 102 Idaho 658, 637 P.2d 1154 (1981), we ruled that a milk truck driver was working in covered employment at the time of his industrial accident. After ruling that the milk hauling business of respondent was sufficiently separate from his dairy business, we held that the transportation of milk was equivalent to the hauling of a finished agricultural product, thus not within the exclusion.

Both respondent and appellant cite the foregoing Idaho cases in arguing their respective positions. Both attempt to analogize the present situation to the fact patterns involved in those previous cases. However, none of those cases are precisely on point. All we can do is attempt to glean general principles from them, and then apply those principles to the facts at hand.

One general principle evident in all the cases is that we are required to look to the general nature of the employer's business in determining whether he is engaged in an agricultural pursuit. The general

character of respondent's business, as found by the commission, is a cattle feeding operation.

Another principle evident from reading of the cases is that courts often look to the traditional meaning of agriculture as the term is commonly understood in an attempt to classify a particular business. *See Backsen v. Blauser, supra; Manning v. Win Her Stables, supra.* If the work is such that it is not ordinarily done by farmers, courts will generally hold that the character of the work is not agricultural, and thus not exempt. However, if the work is ordinarily done by farmers, and is of a nature ordinarily thought of as agricultural, courts will consistently find that work to be an agricultural pursuit and exempt under the workmen's compensation laws.

■ It is also clear in the cases that each business will be judged on its own unique characteristics. We cannot categorize a type of business, *e.g.*, a feedlot, without looking closely at that individual business and its characteristics to see if it has an agricultural base.

■ The Industrial Commission found that respondent's business, a cattle feeding operation, was an agricultural pursuit. Appellant asserts on appeal numerous reasons why this particular cattle feeding operation should not be considered an agricultural pursuit. He argues that respondent offers a limited and specialized service. He argues that excessive specialization or commercialization by a farmer should cause that farmer to lose the advantage of the agricultural exemption. He argues that the fact that respondent charges third parties on a per head, per day basis militates in favor of denying the agricultural exemption because the purpose of the exemption is to allow protection to farmers who cannot recover all their costs. He argues that since respondent does not own all of the cattle he feeds, he cannot take advantage of the exemption. He also argues that he was "special" to the operation of the business, and thus he himself should not be thought of as being engaged in an agricultural pursuit.

Respondent on the other hand argues that it is very ordinary for farmers to raise agricultural crops and feed them to cattle, as one way of marketing the crops. Specifically, respondent urges that the weeding of ditches preparatory to irrigation (whether by spraying or other means) is very typical of the kind of work that is ordinarily done by farmers, and therefore the activity which appellant was engaged in at the time of the accident was an agricultural pursuit.

Our statute plainly exempts agricultural pursuits, which includes "the raising, pelting, shearing, feeding, caring for, training and management of livestock...." I.C. § 72–212(8). Not only does the activity carried on by respondent in the present case fall directly within the language of the exemption itself, but the raising of crops for feeding to cattle is an activity normally done by farmers, and one normally thought of as an agricultural pursuit. Application of the general principles noted in previous Idaho cases, and the statutory exemption itself, to the facts of the present case leads us to the conclusion that the commission did not err in finding respondent's business to be an agricultural pursuit. Thus, we affirm the decision of the commission dismissing appellant's claim for workmen's compensation.

DONALDSON, C.J., and SHEPARD and HUNTLEY, JJ., concur.

HUNTLEY, Justice, concurring specially.

I am forced to concur in the majority opinion because it correctly states the law as to the specific issues raised below and on appeal.

The "agricultural pursuit" exemption to workmen's compensation coverage would facially appear to raise the question as to whether the exemption scheme results in denying the farm worker "equal protection of the law" under the constitution of Idaho and the United States.

BISTLINE, Justice, dissenting.

If I were to vote to affirm the Commission, it could not be on the basis of the

majority opinion. Reviewing older cases from bygone farming days, that opinion moves on to our recent cases of *Dwigans v. Olander,* 98 Idaho 744, 572 P.2d 178 (1977), and *Kuhn v. Box Canyon Livestock, Inc.,* 102 Idaho 658, 637 P.2d 1154 (1981), only to disdeign my attempt at reconciling the present with the past, and facilely falling back upon the language of the statute, "feeding, caring for, training and management of livestock . . . ."

Although a feedlot operation is not known to entail the training or managing of livestock, it is, nevertheless, said that the statute applies because "the raising of crops for feeding to cattle is an activity normally done by farmers, and one normally thought of as agricultural pursuit." Being somewhat of a person who fancies himself as capable of *normally* rationalizing upon such matters, I am not want to disagree with the postulate that crop raising is normally done by farmers—I do normally so regard it. In fact, I have always, normally or abnormally, regarded farmers as growers of crops, and conversely regarded growers of crops as farmers. At the same time, I have generally regarded cattle ranchers as people who own ranches and raise cattle, and I do not question that they fall into the realm of agriculture, as defined by the Workmen's Compensation Law.

And then, too, there are crop-growing farmers who utilize some of their land and feed to raise a few cattle or other livestock, ordinarily for home consumption, but also for market and extra revenue. There is no problem in seeing this as within the agricultural exemption.

There is yet to be considered the would-be capitalist, perhaps much as myself, who, knowing little or, as with others maybe a lot, about the money to be made by feeding cattle, in simple terms recognize that feed goes in, weight goes up, and profit results. It can encompass buying cattle to feed at a lot, which is somewhat different than the farmer who utilizes existing pasture, and different from the cattle rancher who has pasture and range, and it also encompasses feeding for hire—at so much a head or so much per weight increase. I have no recollection of any feedlots in Idaho in its earlier days—but do not doubt their existence in the big cities. A stockyard at or near a railroad yard is a striking example of a feedlot, and there have always been stockyards. It is true that the duration of penning and feeding is shorter than at the feedlots of today. It is true, so I believe, that a stockyard probably would not classify as an agricultural pursuit.

But, the majority implies, as I read the portion quoted, that caring for and feeding livestock is by statutory definition an agricultural pursuit. And, apparently this is to be so no matter what the circumstances.

One cannot help but remember Little Boy Blue, the cowherd and shepherd, and Little Bo Peep, the girl shepherd. They took care of (tended) sheep and cattle, and would be clearly within the exemption. But, were they today found working at a feedlot, it is extremely doubtful that either would be considered as engaged in an agricultural pursuit. "Caring" for sheep, or cattle, as set forth in the statute clearly envisions today's cattle ranch, and as easily envelopes taking care of livestock on a farm—but it is not so readily accepted that an industrially operated independent feedlot is within those categories. It is, in short, a close question, made so as I see it by keeping in mind that caring for livestock would ordinarily entail feeding the same. But that is not always so, as with the case of shepherding cattle and sheep, or having sheep graze or livestock at pasture. "Feeding" on the other hand may more often be taken in the concept of a hired man on a ranch who in winter gets the assignment of feeding the livestock who ordinarily would suffice by feeding themselves—yet such a person is required to give no "care"—largely because the animals are fenced in or simply aren't going to stray from their source of daily delivered sustenance.

The parties recognize the case as close, and give us excellent briefs. Claimant in his opening brief concludes his argument thusly:

"Those cases cited by the Industrial Commission in their Conclusions of Law are not supportive of the determination reached. Lip service was paid to the ironclad dictum of this Court that doubtful cases are to be resolved in favor of compensation; that exemptions from coverage are to be narrowly construed; that the Workmen's Compensation Act is to be given broad and liberal construction, and that the humane purposes of the law leave no room for narrow, technical construction in the interests of justice. These rules have been reiterated by this Court in decisions too numerous to name, and most recently in *Kuhn v. Box Canyon Livestock, Inc., supra.* Instead, the Commission labored under the singular preoccupation of the letter of the law with no regard or consideration to the intent of the law and precedent set by this Court.

"The Commission further erred when it stated, in Conclusion of Law II, R., p. 28, that 'such operations have traditionally been classified in Idaho as agricultural labor.' An operation such as the Employer's, the feeding of cattle belonging to other people for pecuniary gain, has never been classified in Idaho at all. The case at bar is unique. For the first time, this Court is asked to determine if a custom cattle feeding business will be allowed to claim the shelter of the agricultural exemption.

"When the Employer decided there was money to be made in the isolated function of feeding cattle, he forsake his position as a rancher for that of a businessman. When he approached members of the cattle industry with his offer to fatten their cattle, he was offering a limited and specialized service. The protection of the agricultural exemption had been forfeited.

"Those elements necessary to qualify for the agricultural exemption have been applied to the Employer's business, and that business fails to meet any test put to it:

"(1) The nature of the business as a whole (the limited and specialized service of custom cattle feeding, with no degree of ownership in the cattle fed, performed under a contractual agreement)

"(2) The question of 'artificial' v. 'natural' process (the confining of cattle to pens where they are fed special formulas of feed and supplements for the singular purpose of weight gain)

"(3) Specialization and commercialization (only one aspect of a total process is involved, and that one aspect is offered for an agreed upon price)

"(4) The dual business question (the production of feed; not necessary to the operation of the business, but an alternative chosen for convenience and profit)

"(5) The nature of the Claimant's duties (a working manager charged with the responsibility for all activities carried on for the Employer who was treated in a special manner)

"(6) Underlying policy considerations (no administrative difficulties exist, nor are there any problems with passing the cost of coverage on to the consumer)

"The evidence of record establishes that the Employer operates a diversified and specialized business, of a limited nature, and for pecuniary gain. He is not entitled to the shelter of the agricultural exemption."

Appellant's Brief, pp. 35–37.

The employer counters in his conclusion:

"The Industrial Commission's determination here is supported by the spirit and the letter of the agricultural pursuit exemption. A contrary result can be arrived at only by ignoring the plain meaning of the exemption and by engrafting words which easily could have been inserted by the Legislature but were not. We refer to Claimant's implied qualifications (a) that the cattle must have been owned by the employer; (b) that the exemption does not apply to large scale agricultural activity; (c) that the exemption does not apply to feeding cattle in feedlots; (d) that the exemption does not apply to feeding cattle belonging to others in a feedlot; (e) that the exemption does not apply to the specialized agricul-

tural service that requires special technical skills and businesslike management; (f) etc., *ad nauseam.*

"The simple answer is that the Legislature used rather ordinary, easily understood words in its definition of 'agricultural pursuits.' The words should be interpreted in the light of their common, ordinary meaning rather than resorting to a strained interpretation.

"Claimant of course is entirely opposed to the very concept of the agricultural pursuit exemption. We respect that opinion. Many hold the same beliefs. The wisdom of the exemption is subject to honest controversy. All of these things should be addressed to the Legislature, however, rather than to the Court. The question before the Court is not whether the agricultural exemption is 'just' or 'fair' or 'wise' but whether it applies to this situation. If it does not apply it would be unjust, unfair and unwise to hold that it does.

"Claimant has not demonstrated any persuasive authority for his position. The Idaho cases on which he places the most heavy reliance—*Mundell v. Swedlund, Reedy v. Trummell, Manning v. Win Her Stables, Inc., Goodson v. L.W. Hult Produce Co., Dwigans v. Olander,* and *Kuhn v. Box Canyon Livestock, Inc.* —are all distinguishable on the facts or the law or both. The statute has been amended since *Mundell; Reedy* supports the Employer's position; and the facts in *Manning, Goodson, Dwigans* and *Kuhn* are all decisively different than the facts here.

"On the other hand, *Cook v. Massey* and *Reedy v. Trummell* clearly support the Employer's position that an 'agricultural pursuit' (particularly as defined since 1961) is nonetheless so if the services are performed for others. Furthermore, it must be remembered that the Employer's enterprise was carried on on a 540 + acre farm owned by him and his wife; that at the time of the incident in question Claimant, the 'farm manager,' was clearly engaged in activities incidental to irrigation farming common to

southern Idaho and the arid West in general.

"The determination by the Commission was correct. Any other determination would have required the Commission to read into Idaho Code § 72–212(8) words and concepts not contained therein. That is a Legislative function, not a function of the Commission or the Court."

Respondent's Brief, pp. 73–75.

To which the claimant's reply responds, concluding:

"It stands undisputed in the record that the Employer in the case at hand operates a cattle feeding business. R, Conclusions of Law II, p. 28.

"The Employer does not dispute the fact that the purpose of this business is to produce the greatest amount of weight gain in the shortest amount of time. In order to accomplish this, the cattle are kept in small, structured enclosures and fed a scientific mixture of feed and supplements. Br.A., p. 20.

"It stands undisputed in the record that this Employer makes his living through a contractual agreement to feed cattle belonging to other people. R, Findings of Fact, pp. 21 & 22.

"In following the dictum of this Court that the nature of the Employer's business must be considered as a whole, we have a commercial business enterprise, offering a limited and highly specialized service performing a single, isolated function, selling that isolated and specialized service under contract. We do not rely on any cases in particular as authority. However, we DO rely heavily upon the consistent position of this Court that the agricultural exemption is not extended to businessmen who provide a limited and specific service, which performs an isolated function, on a contract basis. *See, e.g., Dwigans v. Olander, supra.*"

Appellant's Reply Brief, pp. 18–19.

At oral argument the employer told us the issue was not clear-cut, largely because of the history of the agricultural exemption, and pointed out how easily the legisla-

ture could have narrowed the exemption language as it did in 1982 for the milk haulers. It was submitted that a comparison might be made in feeding cattle on the famous King Ranch as against feeding cattle on a rented ten acre tract; one is an agricultural exemption, one is not.

The claimant at oral argument maintained that if the issue is in doubt, the nod goes to the working man. Such, of course, has long been the law and is unneedful of citation.

I opened this effort with the statement that if I were voting to affirm, it would not be on the basis of the majority opinion. Rather, it would be on the basis of the employer's contention that the legislature should do the necessary. That body, however, may not be or may not become conversant with the problem. Our decision in *Kuhn v. Box Canyon Livestock, Inc., supra,* was apparently brought to the attention of the legislature, and it acted. This is as it should be. If the Court today affirms the Commission, as seems to be the case, legislative attention will not likely ensue. But it might, and for that reason I have incorporated the summaries of the parties. Even though the employer may prevail today, the employer has candidly suggested the closeness of the issue and the need for refinement of the statute.

The issue being in doubt, I cast my vote as predecessors in this office have done, for the working man claimant.