900 P.2d 1376

Elisio **BECERRIL**, Plaintiff–Appellant,

v.

Brent **CALL**, d/b/a Call Farms, Defendant–Respondent.

No. 21339.

Supreme Court of Idaho, Idaho Falls, May 1995 Term.

Aug. 23, 1995.

Dunn & Clark, Rigby, for appellant. Robin E. Dunn, argued.

Grover Law Office, Rigby, for respondent. Blair J. Grover, argued.

SCHROEDER, Justice.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

Elisio Becerril (Becerril) appeals from a decision of the Industrial Commission (the Commission) holding that his worker's compensation claim against Brent Call d.b.a. Call Farms (Call Farms) was barred by the agricultural exemption of Idaho Code § 72–212(8) (Supp.1995).

After injuring his back while working for his employer, Becerril filed a complaint seeking worker's compensation benefits asserting that his employer, Call Farms, was not exempt from providing coverage under the agricultural exemption.

The Commission assigned the matter to a Referee for hearing. On April 7, 1994, the Referee issued findings of fact, conclusions of law, and a proposed order. The findings of the Referee were as follows:

Employer Brent Call has a family farm in Osgood in Bonneville County. The farm and his residence, which overlap in 2 counties cover approximately a total of 3500 acres. Employer grows potatoes, wheat, barley, hay and corn. Employer milks 160 cows and usually feeds about 500 steer through the winter months with hay and grain raised on the farm.

Employer previously owned Menan Produce which was a fresh pack operation in Menan. Menan Produce has not operated for four years except for two months in 1992. There he did bookkeeping for farm employees. He currently has a secretary at that location. Claimant worked for Menan Produce several years ago.

In the growing season, Employer has 20 employees and only six employees in the winter months. Claimant has worked for Employer since 1977. Claimant is a farm laborer. During the spring, Claimant hauls fertilizer, spreads fertilizer, disks grain and potato ground, marks potato rows, does chisel plowing, plants potatoes, marks corn rows and plants corn and hauls seed. In addition he helps repair and maintain machinery and equipment as time permits. During the summer months he sprays wheat, barley and potatoes, sets up irrigation equipment, swaths and hauls hay, and irrigates corn. He continues with his maintenance of machinery, especially the irrigation equipment and operates both a grain and potato combine.... He also disks, plows and rips. He continues to help with repairs. In the winter, Claimant hauls farm produce to market, hauls hay and straw for the cattle, feeds and beds cattle and helps winterize equipment. He spends most of his time in the shop.

In December, 1992, Claimant hauled Employer's barley from the farm to grain elevators. During this time a spring broke in the truck used for the haul. Employer was not raising any crops on January 4, 1993, the date Claimant was injured. On January 4, 1993, Claimant was working on a ten wheel truck that had been recently unloaded. It had been unloaded on December 20 so that it could be worked on after the holidays. The truck was licensed to the end of December, 1992. New licenses had been applied for but had not yet been received. Employer's trucks are not licensed as commercial trucks. The truck Claimant was working on had not been used for any commercial hauling. It hauled only Employer's product.

On January 4 Claimant and a co-employee, Paul Beck, were replacing a leaf in the springs. To replace springs one must jack the truck up, take the tires off, take

wrenches and take the four bolts off or cut them off with a torch and then replace the springs and replace bolts. Not all of the leaves were broken. Claimant was injured when he was starting to remove seals from the differential.

(Referee's Footnote to Findings: Claimant's testimony differs from the stipulated facts. In the stipulated facts, counsel indicated that Claimant hurt his back while tightening one of the bolts after replacing the spring. Yet Claimant testified that he injured himself while removing seals. The Referee does not find Claimant's testimony credible that he was injured replacing seals. Rather, the Referee finds more credible the stipulated facts that Claimant was injured while tightening a bolt after replacing the springs. However, both tasks require similar simple mechanical acumen.)

Employer's largest shop is located at his residence and is 40 X 60 feet. It has air compressors, welders, hand tools, oil to change with filters, a parts bin, tool benches, and a donkey to lift and remove engines. It is a usual and customary shop common to many farmers, according to Brent Call and Clyde Cook. (Transcript, p. 51). Employer also has a smaller shop located on the Bonneville County farm which is used primarily in the summer.

Claimant worked in the shop about the same amount as Paul Beck, a co-employee. Claimant would replace parts such as starter motors, change belts, change oil, do welding, work with bearings and do clean up work. Claimant has no formal training as a mechanic and does not do internal engine repair work. Prior to his injury, Claimant kept his own tool box in Employer's shop. Claimant estimated that he spent most of the winter months in the shop from 8:00 a.m. until 6:00 p.m. (Transcript, p. 43). On occasion Employer has hired mechanics to come in and do a specific job. As an example, when they had a fire they hired a full time mechanic to come in and rebuild machinery that was destroyed. This mechanic also worked for them last year for about two or three months.

Using these factual findings, the Referee considered whether claimant's claim was barred by Idaho's agricultural exemption to worker's compensation. Idaho Code § 72–212(8) provides the following exemption from mandatory coverage:

(8) Agricultural pursuits. Agricultural pursuits, as used herein, shall include the raising or harvesting of any agricultural or horticultural commodity including the raising, pelting, shearing, feeding, caring for, training and management of livestock, bees, poultry and fur-bearing animals and wildlife raised in captivity, on inclosed lands and public ranges. Agricultural pursuits shall include the loading and transporting, by motor vehicle, of any agricultural or horticultural commodity to any storage, processing, distribution or manufacturing destination and the unloading of the commodity at such destination; provided, that the exemption for the transportation, loading or unloading of agricultural or horticultural commodities shall apply only to individuals, corporations, partnerships or other legal entities who are transporting, loading or unloading only those agricultural or horticultural commodities which the individual, corporation, partnership or other legal entity produced, raised or harvested. The return trip from a manufacturing, processing, storage or distribution destination is exempted if: the return trip to the original point of debarkation is by the safest and most direct route reasonably possible, the cargo transported on the return trip, if any, is to be used exclusively by the individual, corporation, partnership, or other legal entity which is transporting the cargo, and the cargo transported is to be used only in direct connection with the agricultural pursuit.

In *Lesperance v. Cooper*, 104 Idaho 792, 663 P.2d 1094 (1983), the Court held that applicability of the agricultural exemption is determined by looking at: (1) the general nature of the employer's business in determining whether he is engaged in an agricultural

pursuit; (2) the traditional meaning of agriculture and whether the work at issue is ordinarily done by farmers; and (3) each business's own unique characteristics. *Id.* at 794–95, 663 P.2d at 1096–97. The Referee utilized this three-part inquiry and concluded that the agricultural coverage exemption barred Becerril's claim. Specifically, the Referee held that "the general nature of [e]mployer's business was raising livestock and growing crops for feed and for sale." The Referee also concluded that maintenance of machinery fell within the traditional meaning of an agricultural pursuit. Becerril argued that Call Farms' mechanical repair activity was unique, such that doing the mechanical repairs was more akin to a non-agricultural repair shop than to a farming-related task. The Referee rejected this argument, reasoning that the vehicle repair was connected to Becerril's farming duties due to the use of the vehicle in the farming operation. Further, it was common for farm laborers to make this type of repair in the field, and the type of repair was not a complex mechanical task requiring particular expertise. This type of repair was ordinary and incidental to farming, and Becerril's duties were primarily agricultural despite the seasonal need for mechanical repair work. The Referee concluded that Becerril was barred from obtaining worker's compensation benefits by the agricultural exemption to coverage.

The Commission adopted the Referee's findings of fact and recommended conclusions of law. The claimant appeals the Commission's order.

## II.

### THE COMMISSION DID NOT ERR IN HOLDING THAT THE AGRICULTURAL EXEMPTION BARRED THE EMPLOYEE'S CLAIM

■ In *Lesperance*, the claimant was injured while spraying weeds in preparation for planting grain on the employer's cattle feeding ranch. 104 Idaho at 793, 663 P.2d at 1095. Caring for livestock was a specifically exempted activity. *Id.* at 795, 663 P.2d at 1097. The activity in which the claimant was involved at the time of the injury was not mentioned in the statutory exemption. The Court held that the general nature of the employer's business in cattle feeding was an agricultural pursuit. *Id.* The Court relied on the employer's assertions that it was "very ordinary for farmers to raise agricultural crops and feed them to cattle, as one way of marketing the crops." The Court also accepted the employer's explanation that the activity in which claimant was engaged at the time of his injury was quite typically done by farmers in preparation for planting. *Id.* Finally, the Court was satisfied that there was nothing sufficiently unique about the employer's cattle-feeding operations to make the exemption inapplicable despite the claimant's suggestion that "he was 'special' to the operation of the business." *Id.*

■ Weed-spraying is not an activity listed in the statute and it is doubtful that it would qualify as an agricultural pursuit if viewed without reference to the purpose for which it was undertaken. Following the reasoning in *Lesperance*, the Commission's approach of analyzing the mechanical activities at issue in the present case as an integral part of a larger agricultural operation was appropriate. Similarly, *Lesperance* demonstrates that uniqueness will not be determined by the claimant's special role if the disputed activity is one typically performed by other farmers.

In *Tuma v. Kosterman*, 106 Idaho 728, 682 P.2d 1275 (1984), the claimant was injured while galloping a horse for the employer's thoroughbred horse operation which involved both the sale and racing of horses. The Court concluded that the general nature of the employer's business was horse breeding and racing and that horse racing was not a traditional pursuit of the ordinary farmer. What was unique about the employer's business was that the horse racing was a separate enterprise for which claimant had been employed to work exclusively. *Id.* at 731,

682 P.2d at 1278. The Court concluded that the employer's horse racing activities were not exempt from coverage.

The reasoning in *Tuma* requires a determination of whether the mechanical repair shop in which Becerril worked constituted a separate enterprise and whether he was exclusively engaged as a mechanic. The Referee found that the general nature of the employer's business was agricultural and that maintenance of the machinery and vehicles was part of that business. The Commission accepted these findings, and the findings are supported by substantial and competent evidence.

In *Sellmer v. Ruen,* 115 Idaho 700, 769 P.2d 577 (1989), the Court held that a claimant injured while lifting sacked potatoes at a warehouse was involved in an agricultural pursuit such that he could not recover worker's compensation, holding that the language of I.C. § 72–212(8) exempting "loading and unloading" of an agricultural commodity was applicable and dispositive. *Id.* at 701, 769 P.2d at 578. The Court ruled that the employer's cultivation, harvesting and sale of seed potatoes was an agricultural business and that an "agricultural pursuit properly includes 'every process and step taken necessary to the completion of a finished farm product.'" *Id.* (quoting *Cook v. Massey,* 38 Idaho 264, 220 P. 1088 (1923)). The reasoning in *Sellmer* is applicable to the facts in this case. While there is no specific statutory language aimed at truck repairs, as there was for "loading" in *Sellmer,* the maintenance and repair of vehicles on the Call Farms was a necessary step in the agricultural production process.

The Commission's conclusions applying the three *Lesperance* factors are supported by substantial and competent evidence. The general nature of the employer's business at the time that the injury occurred was agricultural. It was usual and customary for farmers to have shops for making such repairs. There was nothing sufficiently unique about Call Farms' shop or Becerril's activities to make the agricultural exemption inap-

plicable. The repair shop existed to serve the farm, not as a separate business entity. The decision of the Commission is affirmed.

## III.

### IDAHO'S AGRICULTURAL EXEMPTION TO WORKER'S COMPENSATION COVERAGE DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSE OF EITHER THE UNITED STATES CONSTITUTION OR IDAHO CONSTITUTION

The appellant challenges the constitutionality of the agriculture exemption under the equal protection components of the United States Constitution and the Idaho Constitution. In *Sellmer v. Ruen,* the Court held constitutional Idaho's worker's compensation exemption for agricultural pursuits under the "equal protection clauses of both the Idaho and United States Constitutions." 115 Idaho at 701–02, 769 P.2d at 578–79. That precedent controls this case.

## IV.

### THE COMMISSION DID NOT ERR IN DENYING CLAIMANT ATTORNEY FEES AND A 10% STATUTORY PENALTY FOR EMPLOYER'S FAILURE TO PROVIDE COVERAGE, AND CLAIMANT IS NOT ENTITLED TO ATTORNEY FEES ON APPEAL

In view of the resolution of the other issues the Commission did not err in denying the claimant's request for attorney fees and 10% penalty for the employer's failure to provide worker's compensation insurance. The claimant is not entitled to attorney fees on appeal.

## V.

### CONCLUSION

The decision of the Commission that the claimant was barred from receiving worker's

compensation is affirmed. The respondent is awarded costs. Neither party is awarded attorney fees.

McDEVITT, C.J., and JOHNSON, TROUT and SILAK, JJ., concur.