901 P.2d 1328

Cynthia RIGGS, surviving spouse of Robbin Riggs, decedent, individually and as guardian of and on behalf of: Casey J. Riggs, William J. Riggs and Cayla L. Riggs, minors, Claimants–Appellants,

v.

ESTATE OF Cyrus Lynn STANDLEE, d/b/a Standlee Alfalfa Farms and Standlee Alfalfa, Inc., Employers–Respondents.

Docket No. 21172.

Supreme Court of Idaho, Boise, March 1995 Term.

Aug. 31, 1995.

Lojek, Gabbert & Strother Chtd., Boise, for appellant. Jeffrey A. Strother, argued.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for respondent. Thomas V. Munson, argued.

SILAK, Justice.

This is an appeal from an Industrial Commission (Commission) ruling that the agricultural exemption to the worker's compensation statutes, I.C. § 72–212(8), bars the appellant's claim for death benefits arising from the accidental death of her husband, Robbin Riggs. We affirm.

## I.

### FACTS AND PROCEDURAL BACKGROUND

Robbin Riggs was killed on October 7, 1990, while operating a hay baler on a farm owned by Owen Ranches in the course of his employment with Respondent Cyrus Lynn Standlee, deceased, Standlee Alfalfa Farms and Standlee Alfalfa, Inc. (generally, Standlee).

The surviving spouse of Robbin Riggs, Cynthia Riggs (Riggs), filed a worker's compensation complaint in December 1992, on behalf of herself and her children. Standlee then moved, in essence, for summary judgment. After briefing by both sides, the Commission entered an order denying the motion. That same order bifurcated the proceedings and determined that a hearing would be held to decide whether the agricultural exemption, I.C. § 72–212(8), applied to the case and whether the statute of limitations barred the claim. All other issues, including Riggs' entitlement to attorney fees, were reserved.

On January 28, 1994, the Commission issued findings of fact and conclusions of law, denying Riggs' claim and finding that the agricultural exemption did apply to this case. The Commission found that Standlee raised and harvested alfalfa on property he owned or leased, but that the majority of his income came from purchasing alfalfa grown, or to be grown, by area farmers. In 1990, Standlee raised and harvested alfalfa himself on approximately 365 acres. He also purchased alfalfa from other farmers, and subsequently harvested the alfalfa on approximately 2,540 acres.

With respect to that portion of Standlee's business operation involving the purchase and harvesting of alfalfa grown by other farmers, the Commission found that Standlee would contact area farmers in late winter or early spring each year to enter into agreements to purchase the farmers' projected alfalfa crops "on the stump," i.e., while the crops were still rooted in the fields. Sometimes Standlee would contract with the farmers in the fall, before the seed for the next season was even planted. He and the farmers would agree on a price per ton to be paid to the farmers after the alfalfa was harvested, transported to Standlee's hay storage sheds, and weighed on his scales.

The Commission further found that Standlee was very professional in pursuing his business activities. He was experienced in the growing and harvesting of alfalfa and was continually attempting to ensure the alfalfa he had contracted to purchase was of premium quality. Standlee planted test plots using different types of alfalfa seed to determine the best seed for that area. He would then recommend that particular type of seed to farmers he had contracted with, and would make that seed available to the farmers at his cost. Even though the farmers were under no actual obligation to utilize that particular type of seed, most of the farmers followed Standlee's recommendations and utilized his seed. After the farmers had planted their alfalfa crops, Standlee visited each farmer approximately once a week and continued to make ongoing recommendations regarding fertilization, watering, and the use of pesticides on the alfalfa crops as they grew.

The Commission found that Standlee's operation included machines to cut, bale, load, and stack the alfalfa, trucks to transport it to hay sheds for storage, and scales to weigh the alfalfa. The estimated value of the hay

sheds was approximately $480,000, and the estimated value of the other equipment for the other processes was approximately $300,000 to $400,000. After Standlee cut and baled the hay and transported it to his hay sheds, it was weighed and stacked and subsequently sold throughout the year to his customers. Farmers doing business with Standlee were not paid for their crops until the hay was weighed on Standlee's scales in order to determine the total amount of tonnage provided by each farmer.

In approximately mid–1990, Standlee purchased a Brillion alfalfa seeder to be used for optimal planting of alfalfa seed. He utilized the seeder to plant his own alfalfa crops in August or September of 1990, and also made the seeder available to farmers he contracted with to allow them to use the seeder to increase the quality of the alfalfa crop.

Based upon the above findings, the Commission thus determined that the agricultural exemption did apply in this case and denied Riggs' claim for benefits. The Commission further ruled that the secondary issue concerning the statute of limitations was moot and declined to address it. Riggs appeals.

## II.

### ISSUES ON APPEAL

1. Whether the Industrial Commission erred in its conclusion that Standlee's activities fell within the definition of "agricultural pursuit" found in I.C. § 72–212(8).
2. Whether the statute of limitations in I.C. § 72–701 bars Riggs' claim.
3. Whether Riggs is entitled to the attorney fees incurred in prosecuting this appeal.

## III.

### THE INDUSTRIAL COMMISSION DID NOT ERR IN CONCLUDING THAT STANDLEE'S ACTIVITIES FELL WITHIN THE DEFINITION OF "AGRICULTURAL PURSUIT" FOUND IN I.C. § 72–212(8).

Preliminarily, we note our standard of review. This Court reviews the Commission's findings of fact exclusively to determine whether substantial and competent evidence supports those findings. *Buffington v. Potlatch Corp.*, 125 Idaho 837, 839, 875 P.2d 934, 936 (1994). We will not try the matter anew by weighing the evidence and acting similar to a trial court, nor is the Court concerned with whether it would have reached the same conclusion based upon the evidence presented. *Pomerinke v. Excel Trucking Trans.*, 124 Idaho 301, 305, 859 P.2d 337, 341 (1993). However, this Court exercises free review over the Commission's conclusions of law. *Davaz v. Priest River Glass Co.*, 125 Idaho 333, 336, 870 P.2d 1292, 1295 (1994); *Dewey v. Merrill*, 124 Idaho 201, 203, 858 P.2d 740, 742 (1993). In the present case, the facts are undisputed and unchallenged by Riggs. Thus, we will freely review the Commission's conclusions of law with respect to the agricultural exemption.

I.C. § 72–212(8) provides the following exemption from mandatory worker's compensation coverage:

> (8) Agricultural pursuits. Agricultural pursuits, as used herein, shall include the raising or harvesting of any agricultural or horticultural commodity ... Agricultural pursuits shall include the loading and transporting, by motor vehicle, of any agricultural or horticultural commodity to any storage, processing, distribution or manufacturing destination and the unloading of the commodity at such destination; provided, that the exemption for the transportation, loading or unloading of agricultural or horticultural commodities shall apply only to individuals, corporations, partnerships or other legal entities who are transporting, loading or unloading only those agricultural or horticultural commodities which the individual, corporation, partnership or other legal entity produced, raised or harvested.

The thrust of Riggs' argument is that the exemption does not apply in this case because Standlee was not a traditional farmer. Riggs claims that Standlee was not a traditional farmer because of the nature of his business relationships with the other farmers

with whom he transacted business. We disagree.

This Court has held that the term "agriculture" is the art or science of cultivating the ground, especially in fields or in large quantities, including preparation of the soil, planting of seeds, raising and harvesting of crops, and the rearing, feeding, and management of livestock. Agriculture also includes tillage, husbandry, and all farm work and other incidental work. *Reedy v. Trummell*, 90 Idaho 318, 321, 410 P.2d 654, 656 (1966); *Mundell v. Swedlund*, 59 Idaho 29, 34, 80 P.2d 13, 15 (1938). That term has also been defined as work "ordinarily done by farmers." *Sellmer v. Ruen*, 115 Idaho 700, 701, 769 P.2d 577, 578 (1989); *Lesperance v. Cooper*, 104 Idaho 792, 795, 663 P.2d 1094, 1097 (1983).

The term "agricultural pursuit," as used in I.C. § 72–212(8), has been interpreted to include every process and step taken and necessary to the completion of a finished farm product. *Reedy v. Trummell*, 90 Idaho at 320, 410 P.2d at 656; *Cook v. Massey*, 38 Idaho 264, 274, 220 P. 1088, 1091 (1923). Hay, or alfalfa, becomes a finished farm product when it has matured and has been cut, cured, gathered, and stacked or housed, since nothing more needs to be done to such crops for its consumption as hay. *Mundell v. Swedlund*, 59 Idaho at 34, 80 P.2d at 15.

■ In conjunction with the statutory definition of I.C. § 72–212(8), this Court has set forth a three-pronged analysis to determine whether an employer is engaged in an agricultural pursuit. The three factors are identified as: (1) "the general nature of the employer's business;" (2) "the traditional meaning of agriculture as the term is commonly understood;" and (3) "each business will be judged on its own unique characteristics." *Tuma v. Kosterman*, 106 Idaho 728, 730, 682 P.2d 1275, 1277 (1984), *quoting Lesperance v. Cooper*, 104 Idaho 792, 794–95, 663 P.2d 1094, 1096–97 (1983).

## A. THE GENERAL NATURE OF STANDLEE'S BUSINESS WAS AGRICULTURAL.

■ The definition of agricultural pursuits, contained in I.C. § 72–212(8), clearly states that it includes the "raising *or harvesting* of any agricultural or horticultural commodity . . ." (Emphasis added.) In 1990, the year of Robbin Riggs' industrial accident and death, Standlee planted, raised and harvested alfalfa on approximately 365 acres that he owned or leased. Further, Standlee derived additional income from contracting with area alfalfa farmers to purchase crops on the stump on approximately 2,540 acres. Standlee provided seed, monitored the growing of the crops, provided the farmers with recommendations, and then harvested the crops and baled, transported, weighed, stacked, and sold the finished product to his customers. Thus, we hold that even though Standlee performed more harvesting than growing of the alfalfa, the general nature of Standlee's business was the planting, growing, harvesting, transporting and selling of alfalfa. Further, the harvesting of the alfalfa alone is enough to fall within the definition of "agricultural pursuit," pursuant to I.C. § 72–212(8), thereby making Standlee's activities exempt under the statute.

## B. STANDLEE'S BUSINESS ACTIVITIES WERE THOSE ORDINARILY DONE BY FARMERS.

The Commission found that Standlee was an alfalfa farmer and that his business activities were those ordinarily done by farmers, except perhaps on a larger scale. Specifically, his business was comprised of the harvesting, baling, transporting, weighing, storage and sale of alfalfa. All of these steps, the Commission found, were taken and necessary to the completion of a finished farm product. *See Reedy v. Trummell*, 90 Idaho at 320, 410 P.2d at 656. The record indicates that the majority of the work involved in alfalfa production is the harvesting, not watering or fertilizing the crop. Therefore, it appears that the work performed by alfalfa producers in general is exactly the work performed by Standlee and is an activity normally done by farmers.

Riggs claims that Standlee's business was one of "custom harvesting" or some other form of farming that does not fit within the characterization of work ordinarily done by farmers. This Court addressed the issue of custom services provided to farmers in *Dwi-*

*gans v. Olander,* 98 Idaho 744, 572 P.2d 178 (1977). In *Dwigans,* the employer conducted a business called "Custom Manure Spreading." The employer cleaned manure out of feedlots and corrals and spread it on farmlands for numerous farmers in southern Idaho. The employer contracted to load and haul the manure at a specified price per truck load and distribute the manure on the farmer's land in accordance with the farmer's instructions. We held that the employer "was not a farmer, but rather a businessman providing a limited, specific service to farmers on a contract basis," and that "[i]t would be incorrect to say that [the employer's] business constituted the 'raising and harvesting' of agricultural products." *Dwigans,* 98 Idaho at 745, 572 P.2d at 179.

With respect to the present case, the record clearly indicates that Standlee was not a custom harvesting operation. There was testimony that Standlee owned several hay sheds worth $400,000-$500,000; that Standlee also owned trucks, and hay loaders to load hay in the winter; that this machinery is typically owned by farmers, not custom harvesters; and that custom harvesters have no need for this equipment, since their job is done once the hay is in the stack. Thus, we hold that Standlee was not in the business of providing a limited, specific service to farmers on a contract basis, at a specified price, and in accordance with the farmer's specific instructions. Rather, Standlee purchased the alfalfa standing in the field. Standlee was involved with the landowners before the seeds were planted. He provided the seed, and eventually a seeder, to ensure proper quality of the alfalfa, and monitored the growth of the alfalfa and determined the appropriate time to turn off the water and begin harvesting. Once Standlee swathed, baled, and stacked the alfalfa, it hauled the alfalfa to its own storage facilities and sold the alfalfa as its own.

C. THE UNIQUE CHARACTERISTICS OF STANDLEE'S BUSINESS ESTABLISH THAT THE AGRICULTURAL PURSUITS EXEMPTION WAS PROPERLY APPLIED IN THIS CASE.

Although Standlee did not own or lease all of the land upon which the alfalfa was grown, and his business operation was on a large scale and emphasized the production steps taken from the time of harvest of the crop onward, the unique characteristics of Standlee's business was agricultural. Standlee planted and grew his own alfalfa crops, and he participated extensively with area farmers in providing alfalfa seed at cost, making specific recommendations regarding the amount of seed to be planted, watering the crops, and the use of fertilizers and pesticides. Standlee then performed all of the harvesting, baling, transporting, weighing, stacking, storage, and subsequent sale of the finished product.

### IV.

### CONCLUSION

We hold that the activities carried on by Standlee in this case fall directly within the agricultural exemption, I.C. § 72-212(8). We further hold that the general nature of Standlee's business was agricultural; that the activities of Standlee were those ordinarily done by farmers and thought of as an agricultural pursuit; and that the unique characteristics of Standlee's business were agricultural.

We do not address the issue of whether Riggs' claim is barred by an applicable statute of limitations under Idaho worker's compensation law, having resolved the first issue in favor of Standlee. We also do not address Riggs' claim that she is entitled to attorney's fees pursuant to I.C. § 72-210 since she did not prevail on the issue of worker's compensation benefits.

Thus, we hold that Robbin Riggs' employment at the time of his industrial accident and death in October 1990 is exempt from worker's compensation coverage under the provisions of I.C. § 72-212(8). Accordingly, the order of the Commission is affirmed.

Costs to respondent. No attorney fees on appeal.

McDEVITT, C.J., and JOHNSON, TROUT and SCHROEDER, JJ., concur.