941 P.2d 1310

R. Ted HALL, Claimant–Appellant,

v.

PRISTINE SPRINGS, INC., Defendant–Respondent.

No. 23105.

Supreme Court of Idaho.

Aug. 7, 1997.

**410**

Richard S. Owen, Nampa, for Claimant–Appellant.

Rayborn & Rayborn, Twin Falls, for Defendant–Respondent. Robert E. Rayborn argued.

TROUT, Chief Justice

R. Ted Hall (Hall) filed a worker's compensation claim for an accident that occurred September 29, 1992. After a hearing before a referee, the Industrial Commission (the Commission) denied Hall's claim for benefits, reasoning that Hall was engaged in an agricultural pursuit at the time of his accident. We affirm the Commission's denial of benefits.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

Pristine Springs, Inc. (the employer) operates a farm, on which trout are raised. Unlike major trout farmers, Pristine Springs is not integrated and, thus, simply purchases commercial trout eggs, feeds the fish, raises them through the various stages of growth, and sells the grown fish to a commercial processor. In 1992, Pristine Springs renovated an existing trout farm and, rather than contract with an engineering firm, supervised all of its own excavation and construction work. Consequently, the employer hired four additional people to excavate access roads and to construct the new concrete trout ponds and raceways, which are areas connecting two or more ponds. When the renovation was complete, Pristine Springs laid off those additional employees.

Pristine Springs hired Hall to work on this four-person excavation and construction crew at the beginning of September 1992. Hall primarily was responsible for watering the roadways and surrounding areas used by the excavation crew in order to prevent dust and sand from blowing. According to Hall's supervisor, Hall was hired for construction work and, at no time, did Hall work with the fish. In fact, throughout the renovation, six employees who were entirely separate from the construction crew were responsible for feeding and tending the fish.

Hall had been driving the water truck when he was injured on September 29, 1992. The truck became stuck in a sandy road area, and Hall sought help from his supervisor and another worker. Apparently, one of Hall's co-workers offered to use a backhoe to pull the truck out of the sandy area. As Hall climbed onto the backhoe to accompany his co-worker to the location of the water truck, Hall caught his boot between the end of the step and the wheel of the backhoe and his

left foot was pulled down into that slot. As a result, Hall suffered a soft tissue injury, specifically a third degree abrasion, near the achilles tendon on his left ankle. Hall's physician released Hall to perform light duties at the beginning of December 1992. Hall returned to work for approximately one week, at which time, Pristine Springs laid off Hall and the other members of the construction and excavation crew.

After Hall was injured, Pristine Springs informed him that, as a trout farm, it was exempt from carrying worker's compensation insurance. However, the employer also told Hall that it voluntarily elects to carry medical worker's compensation insurance through Farm Bureau of Twin Falls. This policy covered medical expenses but not wages, and, at least through August 4, 1994, Farm Bureau paid all of Hall's medical expenses. Pristine Springs, on its own, also paid Hall more than $1,800 to cover some of the wages Hall lost while recuperating.

Hall, nonetheless, filed a notice of injury with the Commission July 22, 1994. Pristine Springs answered Hall's complaint, explaining that it was a trout farm and, therefore, exempt from carrying worker's compensation insurance. The Commission assigned the case to a referee, who presided over a hearing April 18, 1995.

The referee followed the three-pronged analysis set forth by this Court in *Lesperance v. Cooper*, 104 Idaho 792, 663 P.2d 1094 (1983), and determined that the employer's primary business indeed was agricultural and that the employer, therefore, was not required to carry worker's compensation insurance. The referee found that, although trout farming ordinarily is not considered agricultural, it constitutes the raising of wildlife in captivity and, thus, falls within the traditional meaning of agriculture. Additionally, the referee determined that the nature of Pristine Springs' business was agricultural because Pristine Springs' construction of its own trout raceways was not an income-generating business separate from its trout farming business. Consequently, according to the referee, the construction endeavors

were simply incidental to the employer's principal business. The referee also analogized the employer's renovation of the trout farm to a farmer's tilling of soil, reasoning that both simply prepared ground in the manner necessary to raise their respective types of crops. The referee, thus, concluded that Hall was engaged in employment that was exempt from coverage at the time he was injured and recommended denial of benefits. The majority of the Commission adopted the referee's findings of fact and approved the referee's proposed order denying benefits.

## II.

## ISSUES ON APPEAL

### A.   Standard of Review

■ This Court's review of the Commission's decisions is limited by the Idaho Constitution and prior case law. *Dewey v. Merrill*, 124 Idaho 201, 858 P.2d 740 (1993). Although we review the Commission's factual findings, we limit our review to determining whether the Commission correctly denied benefits after it applied the law to the relevant facts. I.C. § 72–732(4); *Morgan v. Columbia Helicopters, Inc.*, 118 Idaho 347, 796 P.2d 1020 (1990). We review questions of fact only to determine if there is substantial competent evidence to support the Commission's findings, and we are not concerned with whether we would have reached the same conclusion based upon the evidence presented. I.C. § 72–732(1); *Riggs v. Estate of Standlee*, 127 Idaho 427, 901 P.2d 1328 (1995). With respect to questions of law, however, we exercise free review and may substitute our view for the Commission's view. IDAHO CONST. art. 5, § 9; *Dewey*, 124 Idaho at 203, 858 P.2d at 742.

### B.   Three-pronged *Lesperance* Test

■ Although no longer effective, I.C. § 72–212(8) exempted agricultural pursuits from coverage by the Worker's Compensation Act (the Act) at the time of Hall's injury.[1] As a result of the statutory exemption,

---

1. This statutory exemption for agricultural pursuits was effective only until January 1, 1997.

Thus, Idaho no longer exempts agricultural pur-

employers who were engaged in an agricultural pursuit were not required to secure payment of compensation by obtaining a worker's compensation insurance policy or by becoming self-insured in accordance with I.C. § 72–301. Likewise, employees who were employed by a business that was agriculturally based and who were working in that agricultural pursuit at the time of injury could not obtain worker's compensation. *See Hubble v. Perrault,* 78 Idaho 448, 304 P.2d 1092 (1956).

Idaho Code § 72–212(8) specifically provided that an agricultural pursuit included "the raising or harvesting of any agricultural or horticultural commodity including the raising, pelting, shearing, feeding, caring for, training and management of livestock, bees, poultry and fur-bearing animals and wildlife raised in captivity, on inclosed lands and public ranges." I.C. § 72–212(8). Numerous Idaho cases have discussed this agricultural exemption. This Court, however, summarized many of those cases in *Lesperance v. Cooper,* 104 Idaho 792, 663 P.2d 1094 (1983), gleaning several overriding principles from those cases. As a result of our prior cases, we were able to set forth a three-pronged analysis designed to determine whether an employer is engaged in an agricultural pursuit within the meaning of I.C. § 72–212(8). We explained that the Commission and, on appeal, this Court must examine: (1) the general nature of the employer's business; (2) whether the employer's endeavors are commonly understood to be agricultural within the traditional meaning of agriculture; and (3) the unique characteristics of the business at issue. *Lesperance,* 104 Idaho at 794–95, 663 P.2d at 1096–97.

■ Hall argues on appeal that the Commission's initial inquiry should have been whether Pristine Springs was engaged in two distinct businesses, rather than whether Pristine Springs was engaged in an agricultural pursuit. He asserts that application of the three-pronged *Lesperance* test to each of the employer's business pursuits, which Hall contends are separate and independent businesses under these circumstances, would lead to the conclusion that the employer was engaged in trout farming, an exempt business, and construction, a covered business. According to Hall, the Commission would have reached such a conclusion if it first had applied the analyses in *Hubble v. Perrault,* 78 Idaho 448, 304 P.2d 1092 (1956), *Manning v. Win Her Stables, Inc.,* 91 Idaho 549, 428 P.2d 55 (1967), *overruled by Tuma v. Kosterman,* 106 Idaho 728, 682 P.2d 1275 (1984), *Goodson v. L.W. Hult Produce Co.,* 97 Idaho 264, 543 P.2d 167 (1975), and *Kuhn v. Box Canyon Livestock, Inc.,* 102 Idaho 658, 637 P.2d 1154 (1981). Hall contends that the Commission should have examined the applicability of *Hubble* and its progeny before applying the *Lesperance* test and that the Commission's failure to engage in that analysis was an error of law. Thus, Hall argues, application of the *Lesperance* test was premature because it is not designed to determine whether an employer is engaged in an exempt business and a second, covered business.

At the outset, we note that *Hubble* does not set forth any analytical framework for determining whether the activities a claimant was performing at the time of injury were part of an employer's overall business or were part of a separate and independent business pursuit. Rather, we simply stated in *Hubble* that, when an employee is considered a general employee, the Commission must look to the principal business of the employer because the principal business, not the activity the employee was performing at the time of injury, determines whether the employer and its business are covered or exempt. *Hubble,* 78 Idaho at 453, 304 P.2d at 1094. We further stated in *Hubble* that, if it is determined that the employer is engaged in both a covered and an exempt occupation and the employee is a special employee hired to perform exclusively in one or the other, the type of occupation into which the employee was hired determines whether the activities are considered covered or exempt. *Id.* at 453, 304 P.2d at 1095. Thus, contrary to Hall's contention, *Hubble* does not speak to the inquiry that was before the Commission in the present case, that is whether an employer is engaged in independent, separate, and distinct business pursuits, one of

suits from coverage by the Worker's Compensation Act.

which is agricultural and exempt from coverage by the Act. However, as demonstrated by our decision in *Tuma v. Kosterman*, 106 Idaho 728, 682 P.2d 1275 (1984), the three-part *Lesperance* test addresses precisely this inquiry.

In *Tuma*, we applied the first of the three prongs of the *Lesperance* test to determine that the employer's business was not primarily horse breeding but was split equally between breeding and racing. *Id.* at 731, 682 P.2d at 1278. Then, in examining the third element of the *Lesperance* test, we noted the principle set forth in *Hubble* regarding an employer who is engaged in both a covered and an exempt occupation and concluded that horseracing cannot be considered an integral part of a horse breeding business. *Id.* at 731, 682 P.2d at 1278. Thus, we recognized that application of the first and third prongs of the *Lesperance* test allows the Commission, as well as this Court on review, to determine whether an employer is engaged in an agricultural business that is exempt and a second business that is covered. Consequently, even if the general nature of the employer's business does not allow a determination, an examination of the unique characteristics of a business will reveal whether the business is comprised of only an exempt pursuit or a covered, as well as an exempt, pursuit.

This analysis of the *Lesperance* test is consistent with cases decided prior to our decision in *Lesperance* but that examined whether there was one business pursuit or two. For example, our conclusion in *Backsen v. Blauser*, 95 Idaho 811, 520 P.2d 858 (1974), that the employer was not engaged in an agricultural pursuit turned on the general nature of the employer's business, or the first prong of the *Lesperance* test. Additionally, the unique characteristics of the employer's seed potato operation and its commercial potato operation allowed us to evaluate each business separately in *Goodson v. L.W. Hult Produce Co.*, 97 Idaho 264, 543 P.2d 167 (1975).

■ In light of our analysis in *Tuma*, we have determined that the Commission did not err when it applied the three-pronged *Lesperance* test to the facts of the present case, because this Court specifically has directed the Commission to consult the *Lesperance* test under such circumstances. *See Becerril v. Call*, 127 Idaho 365, 900 P.2d 1376 (1995); *Tuma*, 106 Idaho at 730, 682 P.2d at 1277. Thus, if an employer arguably is engaged in an agricultural pursuit, the Commission and, on appeal, this Court must look to the *Lesperance* test. Contrary to Hall's contention, our analysis in *Kuhn v. Box Canyon Livestock, Inc.*, 102 Idaho 658, 637 P.2d 1154 (1981), supports our conclusion in the case at hand. In *Kuhn*, the activities the employee was performing when he was injured were not in the nature of creating an agricultural commodity. *Kuhn*, 102 Idaho at 659, 637 P.2d at 1155. Rather, the employee's activities were confined to transporting a completed agricultural commodity. *Id.* at 659, 637 P.2d at 1155. This is entirely different from Hall's activities, which were in preparation for producing an agricultural commodity. Nonetheless, even in *Kuhn*, we did not initially determine that the employer was engaged in two separate enterprises. Instead, we looked to the general nature of the employer's business, which the parties stipulated was agricultural, and analyzed the unique characteristics before determining that the employer indeed was engaged in a separate, independent, and covered business pursuit. *Id.* at 660–62, 637 P.2d at 1156–58. Consequently, regardless of whether Pristine Springs was operating a construction business that was incidental to or independent from its trout farming operation, it was involved in an agricultural pursuit, namely trout farming, and the Commission properly followed the *Lesperance* test in initially looking at Pristine Springs' overall business of trout farming. We additionally note that, if the employer's construction business had been a separate, independent business pursuit, proper application of particularly the first and third prongs of the *Lesperance* test would have revealed that the construction business was a separate, independent, and, thus, covered pursuit.

**C. Substantial And Competent Evidence**

■ The next issue we must address is whether the record contains substantial com-

petent evidence to support the Commission's determination that Pristine Springs was engaged in an agricultural pursuit and that it, therefore, was exempt from coverage by the Act. At the outset, however, we address the two assignments of error that Hall raises. Hall contends that two of the Commission's factual findings are not supported by substantial competent evidence: (1) "[t]he testimony is unrefuted that all trout farmers under similar circumstances design, excavate and construct their own raceways and that there are no construction crews in the valley that have expertise in this endeavor (other than those crews who, as here, do the concrete work)" and (2) "the excavation, hauling, road-raceway construction activities here were a necessary part of Pristine Springs' trout farming operation.... Although the construction phase of this activity can be separately identified, it is integral to the trout farming operation and must be done before concrete can be laid."

Addressing first the Commission's finding that trout farmers ordinarily construct their own raceways, we have determined that the record contains substantial competent evidence to support this finding. Richard Eggleston (Eggleston), who worked in trout farming for more than thirty years and was the general manager of Pristine Springs, testified that the construction of trout raceways requires a level of expertise that no construction crews in the Hagerman area possess. Although Eggleston also testified that a limited number of companies could complete the excavation work, he explained that "[a]lmost every hatchery in the valley does their own excavations" because the raceways must be stair-stepped in order to ensure that the water remains charged. This testimony supports the Commission's finding that trout farmers in the Hagerman area excavate and construct their own trout raceways in the ordinary course of their business, and we, therefore, conclude that Hall's assignment of error is without merit.

The next finding with which Hall takes issue is related analytically to the finding discussed above. In determining that construction of the trout raceways was an integral part of the employer's business, the Commission reasoned that the employer had no alternatives to excavating the land and constructing the raceways on its own and, therefore, that those activities, by definition, were an integral part of the employer's trout farming operation. The Commission relied heavily upon the testimony of Eggleston, who said that he had performed the same type of excavation work that he oversaw for Pristine Springs "for almost every hatchery in the valley" throughout his thirty-year career. He additionally testified that the trout farms "always" have to excavate and construct the trout raceways themselves because it is an "ongoing process" and no construction crews in the Magic Valley have expertise in this type of excavation and construction. As with the finding discussed above, Eggleston's testimony comprises substantial competent evidence to support the Commission's determination that Pristine Springs' excavation and construction activities were integral and necessary to the trout farming operation. Thus, we hold that the Commission's finding that the employer's excavation and construction activities were integral and necessary to the employer's trout farming operation was not clearly erroneous.

We next address whether there was substantial competent evidence to support the Commission's ultimate determination that Pristine Springs was engaged in an agricultural pursuit and that Hall was a general employee of Pristine Springs when he was injured. The Commission first found that trout farming clearly fell within the statutory language of I.C. § 72–212(8) because it "constitutes the raising of wildlife in captivity [which] is undisputably [sic] exempt under the statutory language." As we have indicated above, this clearly was not an erroneous finding.

Applying the first prong of the *Lesperance* test, the Commission found that Pristine Springs' principal business was trout farming, which is agricultural in nature. Although this probably is not farming in the traditional sense, we have determined that, based upon the statutory definition, our prior case law, and the record, this was in the nature of an agricultural business. Under the second prong, the Commission found that

the construction of the raceways was necessary and integral to the farming operation because the employer had no alternative to performing the construction work itself. The record supports this determination. We believe the activities Hall was performing when he was injured could commonly be understood to be agricultural. Under these circumstances, the construction activities were similar to preparing ground for raising crops or building a fence around a feedlot, which, likewise, are considered activities typically incident to a farming operation. *See e.g., Bartlett v. Darrah,* 76 Idaho 460, 285 P.2d 138 (1955). Applying the third prong, the Commission found that "Pristine Springs is engaged in an agricultural pursuit even when engaged in the construction of raceways and work attendant thereto." In examining the unique characteristics of this particular business, again, we believe the testimony supports the determination that constructing ponds and raceways was a commonly accepted part of the trout farming operation. Thus, we conclude that, in this instance, there is substantial competent evidence to support the Commission's findings.

The final issue this Court must resolve is whether the Commission properly denied benefits, which is a question of law. If it is found that a claimant is engaged in an agricultural pursuit at the time of injury, the Commission is entitled to deny compensation. I.C. § 72–212(8). Because the Commission properly found that Hall was engaged in an agricultural and, therefore, an exempt occupation when he injured his ankle, we have concluded that the Commission did not err when it denied benefits.

### III.

### CONCLUSION

The Commission's decision to deny worker's compensation benefits is affirmed. Costs on appeal to respondents.

JOHNSON, McDEVITT, SILAK and SCHROEDER, JJ., concur.